**Robert E. SCHNEIDER, Jr., et al., Plaintiffs,**

v.

**COLEGIO de ABOGADOS de PUERTO RICO, et al., Defendants.**

Civil Nos. 82–1459(TR), 82–1513 and 82–1514.

United States District Court, D. Puerto Rico.

Oct. 30, 1996.

Robert E. Schneider, Jr., San Juan, PR, pro se.

Carlos A. Rodriguez Vidal, Isla Verde, PR, for Colegio.

Dep't of Justice of the Commonwealth, for Commonwealth Officials.

Salvador Antonetti, San Juan, PR, for Justices of the P.R. Supreme Court.

## MEMORANDUM OPINION AND ORDER

JAMES L. WATSON, Senior Judge, Sitting by Designation.

This opinion deals with a dispute that has been going on for almost two decades between a number of attorneys practicing law in Puerto Rico and the Colegio de Abogados de Puerto Rico (hereinafter the "Colegio"), i.e. the Puerto Rico Bar Association.

Time and judicial decisions have reduced the issues to two. The first is the question of whether compliance has been achieved by the Colegio with the orders of this court mandating a mechanism by which the members of the Colegio can avoid paying for Colegio activities that are not within the core purposes of a bar association. The second is the question of attorneys' fees for plaintiffs. These issues are the focus of a motion by plaintiffs for entry of judgment and for injunctive and other relief, based on an asserted failure of the Colegio to comply with orders of this court.

Since the motion asks for relief that was granted and held in abeyance in an earlier phase of this litigation that history will be reviewed. Hopefully this will provide a coherent background to the result reached herein and will obviate the need for further reading on the part of all except those who are duty-bound to delve into the prior opinions. This summary does not contain the details of some extremely intricate procedural matters.

In 1982 Plaintiffs Schneider and Ramos filed an action to challenge the constitutionality of the laws that required attorneys in Puerto Rico to be members of the Colegio and to enjoin the attempt to disbar them for refusing to pay dues to the Colegio. The Supreme Court of Puerto Rico had earlier ordered them to pay the dues or face disbarment in *Colegio de Abogados de Puerto Rico v. Schneider, et al.,* 112 D.P.R. 540 (1982). That decision also recognized the right of lawyers to prevent the Colegio from using their dues to support ideological causes outside the core purposes of a bar association and promised to develop a "final segregation" plan. When Schneider and Ramos refused to pay dues the Supreme Court suspended them from the practice of law in June, 1982.

The federal action was brought against the Colegio, the Bar Association Foundation (the "Fundacion"), the Justices of the Supreme Court of Puerto Rico, and the Puerto Rico Secretaries of Justice and the Treasury. Based on 42 U.S.C. § 1983, the action attacked the compulsory membership and dues statute, the compulsory purchase of forensic and notarial stamps for use on legal documents and the disciplinary proceedings.

The district court dismissed the conspiracy claims, the disciplinary proceeding claims and damage claims against the justices, many of the damage claims against the Colegio and the Fundacion, and all claims regarding the outcome of prior disciplinary proceedings.

What remained were claims for declaratory and injunctive relief against the compulsory membership, the dues and the stamps, claims that were directed at the justices of the Supreme Court, the Colegio and the Fundacion. *Schneider v. Colegio de Abogados de Puerto Rico,* 546 F.Supp. 1251 (D.Puerto Rico 1982).

The Court of Appeals for the First Circuit granted a petition for a writ of mandamus dismissing the claims involving compulsory membership and dues against the Justices of the Supreme Court. The court so decided on the ground that there was no reason to believe that the justices would penalize as misconduct the refusal to join the Colegio or pay dues if the federal courts were to rule that they were constitutionally justified. However, the court retained them as parties in the stamp claim on the ground that they had administrative responsibilities with respect to the stamps that made them proper parties for the purposes of the existence of a "case or controversy." The court noted that they were "purely nominal parties." The claims against the Colegio and the Fundacion were left untouched. *In re The Justices of the Supreme Court of Puerto Rico,* 695 F.2d 17 (1st Cir.1982).

Thereafter, in December of 1982, the Colegio informed the Supreme Court of Puerto Rico that it had created a mechanism for refunding dues money to lawyers. While this was under consideration, the district court, in June of 1983, following an evidentiary hearing and full argument and briefing, characterized the mechanism proposed by the Colegio as a "sham" and enjoined all defendants except the justices of the Supreme Court of Puerto Rico from taking any action against lawyers for failing to pay dues or fees to the Colegio. It also enjoined any use of funds from forensic or notarial stamps for the use of the Collage or any adverse consequences from the failure to use the stamps. The court also issued a declaratory judgment declaring portions of Law No. 43 and other statutes providing for the funding of the Colegio to be unconstitutional. *Schneider v. Colegio de Abogados de Puerto Rico,* 565 F.Supp. 963 (1983).

In August of 1984 in *Romany v. Colegio de Abogados de Puerto Rico,* 742 F.2d 32 (1st Cir.1984), the court of appeals held that the district court should have abstained from reaching the merits of the case and should have allowed the Supreme Court of Puerto Rico "a reasonable time within which to review the Colegio's remedy, and to accept, reject or modify it." It vacated the injunction without ruling on the merits of the analysis of the district court, directing the district court to await action by the Puerto Rico court. The appellate tribunal stated that "While we can appreciate the concerns of the district court, we think this matter must be approached with deliberation and full respect for the role of the judiciary of the Commonwealth of Puerto Rico." 742 F.2d at 43. While this reasoning was primarily addressed to the dues issue, the stamp issue was also found to be appropriate for abstention. The court of appeals also provided that during the pendency of further proceedings the plaintiffs would have to pay only 50% of their annual dues to the Colegio. The remainder was to be paid into an escrow account managed by a neutral entity.

In June of 1986 the Supreme Court of Puerto Rico issued its final rule governing the matters on which the court of appeals had ordered a period of abstention. The elements of that procedure were to deposit 15% of the dues of "dissenting" attorneys into an escrow account and require them to make a general objection to ideological use of their dues upon payment of the dues. Refunds were to depend on case-by-case objections to events during the year, following which they would receive a proportionate refund, as determined by a three-member panel composed of retired members of the Puerto Rico judiciary. The panel would determine what activities are objectionable and whether the 15% escrow should be modified at a later date. The Rule also barred objection to 15 listed "functions and purposes" of the Colegio. The Colegio moved to dismiss the federal action at that point on the ground that the decision of the Supreme Court had become res judicata as to plaintiffs' claims in this action. That motion was denied in *Schneider v. Colegio de Abogados de Puerto*

*Rico,* 670 F.Supp. 1098 (D. Puerto Rico 1987).

In March of 1988 the district court reached the merits of the case again in *Schneider v. Colegio,* 682 F.Supp. 674 (D. Puerto Rico 1988). The court found that the 1986 rule did not meet constitutional requirements because it did not properly identify those activities which cannot be funded by compulsory fees, and did not provide adequate procedures for determining and refunding the amounts attributable to objectionable activity. The court undertook to define the permissible core activities for which dues could be compelled and outlined the measures needed to bring the refund procedures into compliance with federal law. In the absence of lawful definitions and procedures in the promulgated rule, the court enjoined the Colegio from taking action against non-dues-paying lawyers and further held that the Colegio must either end all ideological activity or end compulsory bar membership. On the question of forensic and notarial stamps, whose proceeds the Rule had designated for a set of clearly unobjectionable bar purposes, for bar members' life insurance as well as for "any other purpose comprised within the duties and purposes of the Bar Association," the court held that unless the issue of dues was properly resolved, even the legitimate use of stamp proceeds would be a way of subsidizing ideological activities by allowing more of the voluntary dues to be used for them.

On appeal in *Schneider v. Colegio,* 917 F.2d 620 (1st Cir.1990), the Court of Appeals for the most part agreed with the district court. It did, however, delay the implementation of the injunction to allow six months for a modification of the Rule, during which period 100% of the dissenters' dues would be held in escrow. The appellate court did not agree with the district court on the question of the stamp proceeds, and saw a problem arising only if the Colegio became a voluntary bar, in which case stamp proceeds used for traditional core purposes benefiting the legal profession would not inure to the benefit of all lawyers in Puerto Rico. If, however, the Colegio worked out a lawful dues-refund mechanism, the devotion of stamp revenues

to core purposes and the allocation of consensual dues revenues to objectionable activities would not implicate the First Amendment. With that partial reversal the appellate court held that the Colegio may only use mandatory dues for core purposes of regulating the legal profession, improving the quality of legal services and for related activities such as social events and insurance programs. It required modification of the Rule to make the amount held in escrow comport with the annual reality of ideological activity and to develop a refund procedure that did not have the defects of requiring a preliminary general objection followed by detailed objections to specific activities as they occurred. The case was remanded for further proceedings.

The Colegio filed a petition for certiorari in June of 1991 and the Court of Appeals granted a stay of the injunction that would have otherwise gone into effect. In January of 1992, the United States Supreme Court denied certiorari. After that the district court ordered that the injunction would go into effect in March of 1992 if the Rule governing Colegio dues and refunds had not been appropriately modified.

In June of 1992 the Supreme Court of Puerto Rico adopted a new set of Rules regarding Colegio funds to become effective on July 1, 1992. After briefing by the parties the district court ordered modification of those rules in November of 1992. The Rules were modified in January of 1993 and read as follows in a certified official translation:

> Supreme Court of Puerto Rico's Regulations Relating to the Use of The Colegio De Abogados De Puerto Rico Funds Derived From the Payment of Dues And The Sale of Notarial and Bar Stamps

### STATEMENT OF PURPOSE

Compulsory bar membership has been recognized by case law as a means for protecting the legitimate interests of Puerto Rico's legal profession and for channeling its collective social responsibilities. However, this compulsory scheme must be structured in a manner compatible with the lawyers' freedom of expression. Hence, it should provide for the individual's right to dissent, to freely

express his beliefs and opinions, and to not feel compelled to support causes or assume positions which are in conflict with his individual conscience.

In keeping with already approved standards, these rules strike a balance between the characteristics of compulsory bar membership and the individual bar member's freedom of expression.

### Rule 1 Title and legal grounds

These rules which shall be known as *Rules relating to the use of the Puerto Rico Bar Association funds collected from the payment of dues and from the sale of notarial and bar stamps,* are adopted as part of the inherent power of the Supreme Court of Puerto Rico to regulate the legal profession. These rules complement the standards which govern the Bar Association activities set down in its organic act, No. 43 of May 14, 1932, as amended, and any other applicable statutes and case law.

### Rule 2 Activities of the Puerto Rico Bar Association; financial support from bar members

(A) For purposes of these rules, the activities of the Puerto Rico Bar Association (Bar Association) are grouped in two (2) categories:

(1) First-category activities—those activities that deal specifically with the regulation and welfare of the profession, and which seek to improve the quality of the legal services offered in our country. The following activities fit into this category:

(a) maintaining the moral and professional integrity of lawyers;

(b) promoting professional competence among bar members in order to improve the legal services offered to the community;

(c) implementing community outreach programs, and

(d) improving the functioning of the courts.

Also within this category are all those activities of a similar nature which would benefit all bar members, and all those activities necessary for the administration of the institution.

(2) Second-category activities—those activities which involve community issues and needs and where the Bar Association, through its elected bodies or officials, assumes positions with ideological overtones. Whenever these activities depart from the first category of services described in subsection (1) of this rule, the possibility for ideological overtones increases. Those activities which have a combination of both categories shall be considered within this category.

The activities create a need for safeguarding the rights of bar members in such a way that they are not compelled to lend financial support to causes or positions that do not represent their beliefs and views, and their right to voice positions on issues different from or contrary to those espoused by the Bar Association's elected bodies and officials.

(B) Bar members have the legal obligation to pay the Bar Association dues to finance the activities in the first category, but are at liberty to choose whether or not to finance second-category activities.

(C) The use of Bar Association facilities by groups other than the Bar Association for second-category activities shall be for a fee according to the Bar Association's standard rates.

(*Ch*)[1] These rules seek to guarantee compliance with this obligation and give bar members the liberty to exercise this option.

### Rule 3 Use of Bar Association name

All Bar Association Rule 2 second-category activities or activities or expressions shall expressly state that such activity or expression does not necessarily have the support of all its members.

### Rule 4 Decision of bar members

(A) The Governing Board of the Bar Association shall classify the activities and expenditures in its itemized annual budget proposal in either of the Rule 2

---

1. *Ch* is the fourth letter of the Spanish alphabet.

categories. The proposed budget shall be distributed to all bar members prior to the General Assembly. Challenges to the classification of items on the budget shall be within the exclusive competence of the Review Board of the Bar Association Activities created in Rule 8 of these rules. Allocation of budget funds shall take into consideration, among other things, the accounting records from previous years audited by an independent certified public accountant.

(B) The Bar Association shall distribute the following documents among its members along with the annual dues notice:

(1) a certificate that the budget was approved as circulated or informing of the approved amendments to the same, and

(2) a statement of income and expenses of the closest prior fiscal period for which figures are available, which shall never be prior to the penultimate period. This statement shall be duly certified by an independent auditor who shall itemize all expenses incurred by the Bar Association in either of the two Rule 2 categories of authorized activities.

(C) The Bar Association shall include in the annual dues notice the sum each bar member must pay if he chooses to finance second-category activities or if he chooses not to finance second-category activities. The annual dues shall be paid on the date stipulated by regulation.

(*Ch*) The amount paid by the bar member in dues within the term fixed for such payment, will reflect that he has chosen to finance second-category activities or that he has chosen not to finance them.

(D) The identity of bar members who choose not to finance second-category activities shall be kept confidential by the Bar Association, the Governing Board, and the Review Board.

## Rule 5  Dues

(A) Bar members who choose to finance all Bar Association activities shall pay the annual dues fixed by the General Assembly in accordance with the law.

(B) Computation of annual dues for bar members who choose not to finance second-category activities shall be based on the classification of the activities included in the Rule 4(B)(2) statement of income and expenses. The annual dues shall be an amount equal to the proportion of the regular dues that expenditures for first-category activities bear to expenditures for all Bar Association activities carried out during the year.

(C) Second-category activities shall not be funded from loans or contributions to the Bar Association, unless otherwise specified by the person who makes the contribution at the moment such contribution is made and it is thus accepted by the Bar Association upon receipt of the same.

## Rule 6  Remedial mechanisms

(A) Any bar member who pays his Rule 5(B) bar dues is entitled to resort to the Review Board of the Bar Association Activities (Review Board) created by these rules, with regard to:

(1) the classification of any particular activity included in the audited statement of income and expenses used as basis for the computation of dues, and/or

(2) the real expenses of a given activity.

(3) any nonbudgeted activity funded by first-category activity dues that arises during the course of the year, with respect to classification or amount of expense.

(B) The petition before the Review Board shall be filed according to Rule 9 procedures and terms.

(C) Should the Review Board determine, after adjudicating the petitions filed for the year in question, that the expenses for second-category activities exceeded the budget, it shall order the Bar Association to make refunds to the bar members who chose not to finance such activities, or later objected to nonbudgeted, second-category activities, and to pay interest at the legal rate prevail-

ing at the time when the dues were paid. The Review Board shall remit all funds to dissenters within a reasonable time. The Review Board shall order any find surplus remitted to the Bar Association.

**Rule 7  Reserve Account**

(A) Every year the Governing Board of the Bar Association shall deposit in an escrow account a part of the dues paid by the bar members who choose not to finance the Bar Association's second-category activities. This reserve shall cover refunds ordered by the Review Board, under Rule 6(C), in the event second-category activities exceed the budget.

(B) The sum of the reserve account shall be an average of the overdraft percent of the two (2) preceding fiscal periods, duly certified by an independent auditor, unless that percentage is below five (5) percent of the total annual budget, in which case the reserve percentage will be five (5) percent of all dues.

For the first and second year after these rules go into effect, there being no prior overdrafts, the reserve account shall be equal to 50% of the dues adjustment resulting from the Rule 5(B) computation.

**Rule 8  Review Board of the Bar Association Activities**

(A) A self-governing body, which shall be known as the Review Board of the Bar Association Activities, is hereby created.

(B) The Review Board shall be composed of three (3) members appointed by the Supreme Court of Puerto Rico for a two (2) year term. Board members may be appointed for an additional consecutive term. The first three appointed for one (1), two (2), and three (3) year terms, respectively. The Court may also, in the exercise of its powers, appoint two (2) substitute members to fill in for any member in office who cannot participate in a given matter.

(C) The Supreme Court shall appoint a substitute or new member to fill any vacancy which may arise in the Review Board before the end of tenure. This

appointment shall be for the remaining term of the vacant post.

(Ch) Appointees to the Review Board shall be chosen from among former Supreme Court justices or former judges of the Court of First Instance.

(D) The Review Board may request the Supreme Court to increase its members if needs and workload so warrant it.

(E) The Office of Courts Administration shall furnish the Review Board with the physical facilities and materials necessary for its sound operations.

(F) Review Board members who are not permanent employees of the Commonwealth of Puerto Rico, its instrumentalities or public corporations, or who are receiving Government retirement benefits, may receive a per diem allowance of fifty dollars ($50) for each Review Board session they attend or for each day they devote to official tasks ordered by the Review Board or its Chairman. This per diem allowance shall be paid from the Bar Association's operating capital.

(G) The Review Board shall adopt bylaws that are compatible and supplementary to these rules.

**Rule 9  Review Board proceedings**

(A) Appeals before the Review Board shall be made by filing a brief with the following information:

(1) the petitioner's name, address, telephone, fax and Bar Association numbers.

(2) the objectionable activity in terms of classification or expense, and

(3) the grounds for the objection when expenses are at issue.

(B) A Rule 6(A) petition objecting to budgeted items shall be filed before the final date set for payment of the annual dues. All petitions objecting to nonbudgeted items shall be filed within ten (10) working days after the event or item occurs. Filing of a petition shall not defer a bar member's obligation to pay his dues.

(C) All briefs filed with the Review Board shall be served on the Bar Association and it shall be thus stated in the same document. The Bar Association shall appear by brief within a period of twenty (20) days as of the date· of service.

(Ch) The parties, in Review Board proceedings, shall be afforded an opportunity to present their evidence and confront opposing evidence. The Bar Association shall have the burden of proof in these proceedings and the Rules of Evidence shall apply whenever compatible herewith.

(D) The Review Board may consolidate petitions to avoid repetition and unnecessary delay.

(E) The Review board shall render its decision in writing within a period of thirty (30) days after the petition is taken under advisement. It shall briefly state the grounds for its decision and fix the amount, if any, that the Bar Association must refund to bar members who do not finance Rule 2 second-category activities.

(F) Review Board decisions may be appealed to the Supreme Court by the petitioner or by the Bar Association.

(G) The Review Board shall publish a "Summary" of its decisions in one of the Bar Association's official publications, without disclosing the identity of the parties.

**Rule 10 Proceeds from sale of notarial and bar stamps**

(A) Proceeds from the sale of notarial and bar stamps shall be deposited in a separate account and shall only be used to fund first-category activities.

(B) One third (⅓) of all notarial stamp proceeds shall be earmarked for legal services to the community, such as free legal services to the indigent and continuing education programs for lawyers and notaries.

(C) The Bar Association shall report on a yearly basis, in the statement of income and expenses, the proceeds received from the sale of stamps and a list of the activities. funded with these proceeds.

**Rule 11 Cases not provided for by these Rules**

When no specific proceeding has been provided for in these rules for unforeseen situations, the Court may regulate the same in any manner not inconsistent therewith or with any applicable legal provision.

**Rule 12 Effectiveness**

These rules shall become effective July 1, 1992.

(Amended on January 8, 1993)

■ In their motion for entry of judgment and injunctive relief, plaintiffs have argued that the Rule reproduced above limits the right to review to those who elected not to finance non-core activities at the beginning of the year, i.e., when the budget was first announced or approved. Plaintiffs claim that Rule 6 of the Rules still does not provide a way to object to non-budgeted, non-core items that arise during the year. for the first time.

This claim is totally incorrect. At a time when this judge had first entered the case, and when a complete copy of the new rule was not in the record, the .adamancy with which this claim was advanced caused this court to hold hearings and order that a certified translation of the new Rule be filed. But when all is said and done plaintiffs have been unable to point to any meaningful way in which the new Rule fails to conform to the constitutional standards laid out by this court and the court of appeals.

The Rule now provides, in Rule 9(B), for two ways to object to non-core use of the dues. One is a petition objecting to budgeted items, which must be filed before the date set for payment of annual dues. The second is a petition objecting to a non-budgeted item. That petition must be filed within ten working days after the event occurs. In Rule 6 the remedial mechanism provides an opportunity to challenge the original budget and any non-budgeted activity that arises during the year. This fully protects the rights of lawyers to be free of any compulsion to pay dues to support activity that is

outside the core purposes of a bar association.

Plaintiffs have also claimed that the Colegio has not refunded to them the amount of dues properly attributable to non-core activities over the period of this litigation. The court has reviewed the parties' contentions regarding the amounts placed in escrow at various stages of this action and finds that the fairest way to resolve this issue is to require a 50% reduction in dues for the entire period from the commencement of the actions up to the date of adoption of the current Rule regulating the Colegio's use of dues. To the extent that, in any year of that period, the refund by the Colegio to plaintiffs was less than 50% of the compulsory dues, the difference shall be paid to plaintiffs with interest from the end of that membership year.

Plaintiffs' motion also contains argument on the subject of the handling of stamp revenues by the Colegio and on other matters termed "fiscal irresponsibility." The court views these as going beyond the limits of the action as it has been defined by the decisions in the case. Accordingly, those arguments are not considered.

Now the court turns to the application for attorneys fees under 42 U.S.C. § 1988. The court cannot resolve the question of attorney's fees in its entirety at present. This is due to the fact that having entered the case relatively late in its history, this judge is relying on material specially extracted from the voluminous record by the parties. These extracts do not contain pre–1988 work records. As will be specified, some additional information is required to fully resolve the appropriate amount of attorneys' fees. But, for the moment, certain basic matters can be decided.

■ First of all, the court finds that the plaintiffs are prevailing parties within the meaning of 42 U.S.C. § 1988 and entitled to attorneys' fees. They have prevailed on a significant issue of constitutional law and have achieved a vindication of civil rights for the benefit of lawyers of Puerto Rico and for the clarification of the law governing the conduct of a bar association. The refinement of the rules of the Colegio to conform to constitutional requirements safeguarding the freedom of expression of individual members is a major accomplishment. Plaintiffs' action was a direct cause of those changes. The fact that the Colegio was required to pay only one dollar to each of plaintiffs and that no further damages were awarded is of no moment. In this case monetary damages are not the measure of accomplishment. The securing of civil rights is the major factor. Those claims in which plaintiffs failed to prevail were reasonably related to the claim on which they succeeded. The other claims were not distinct in all respects and therefore should still be considered in determining the proper fees. *Hensley v. Eckerhart*, 461 U.S. 424, 440, 103 S.Ct. 1933, 1943, 76 L.Ed.2d 40 (1982). There are no special circumstances in this case that would render an award of fees unjust. *Blanchard v. Bergeron*, 489 U.S. 87, 89 n. 1, 109 S.Ct. 939, 942 n. 1, 103 L.Ed.2d 67 (1989).

In passing, the court notes the salutary statement of the Supreme Court in the *Hensley* case that "[a] request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley*, at 437, 103 S.Ct. at 1941. It is possible, that given the benefit of the determinations made in this opinion, the litigants will find a way to settle the question of fees without further litigation.

■ Having determined that the plaintiffs are prevailing parties and are entitled to fees for their work, the court turns to the question of what is to be included in those fees and who is to pay them. Plaintiffs are claiming fees for hours attributed to work in state court proceedings. Absent a showing that these hours, or any part of them, were either done for the benefit of this federal litigation or necessary to maintain or advance this litigation, or otherwise connected to or required by this litigation, such work is not covered by 42 U.S.C. § 1988. *Webb v. Dyer County Bd. of Ed.*, 471 U.S. 234, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1984). Plaintiffs will be given an additional opportunity to demonstrate that hours worked on state court matters satisfy the above criteria.

The court has reviewed the records of plaintiffs' work in this action since 1988 and found them satisfactory for the most part with respect to time spent. Preliminary indications are that defendants' objections to the time spent as excessive or duplicative will not result in a reduction greater than 5% to 7% of the hours claimed. However, the court will not issue a final opinion until it has the records prior to 1988 and requests plaintiffs to extract them from the record, compile them and supply them. In addition, the court will require affidavits from independent attorneys to establish the appropriate hourly rate for the various periods covered by this action. See, *Bordanaro v. McLeod*, 871 F.2d 1151, 1160 (1st Cir.1989) cert. denied 493 U.S. 820, 110 S.Ct. 75, 107 L.Ed.2d 42 (1989). It will therefore hold in abeyance a ruling on the total time and rate to be allowed. The court will also hold in abeyance a decision on what adjustment, if any, will be made, for variations in the skill and ability needed for various types of work.

The Justices of the Supreme Court of Puerto Rico, designated as nominal parties early on, shall not be subject to attorneys' fees and costs.

In light of the above it is hereby ORDERED that plaintiffs' motion for entry of judgment is DENIED. It is further ORDERED that the Colegio shall refund dues to plaintiffs in the amount set out in this opinion. The plaintiffs' application for attorneys' fees is GRANTED with plaintiffs given 60 days to supply time records prior to 1988, such proof or argument as may relate to time spent on state court matters related to this action, and affidavits from independent attorneys with respect to prevailing attorneys' fees during the periods in question. Defendants shall have 30 days thereafter to respond.