<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                United States Court of Appeals
                    For the First Circuit

No. 98-1071

               ROBERT E. SCHNEIDER, JR., ET AL.,

                     Plaintiffs, Appellees,

                               v.

               COLEGIO DE ABOGADOS DE PUERTO RICO

                     Defendant, Appellant.

No. 98-1073

               ROBERT E. SCHNEIDER, JR., ET AL.,

                     Plaintiffs, Appellees,

                               v.

      SECRETARIES OF JUSTICE AND TREASURY OF PUERTO RICO,

                    Defendants, Appellants.

No. 98-1619

               ROBERT E. SCHNEIDER, JR., ET AL.,

                    Plaintiffs, Appellants,

                               v.

          COLEGIO DE ABOGADOS DE PUERTO RICO, ET AL.,

                     Defendants, Appellees.

                                
                                
                                
                                
        APPEALS FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

      [Hon. James L. Watson, Senior U.S. District Judge]

                             Before

                     Lynch, Circuit Judge,
                                
                 Hall, Senior Circuit Judge,
                                
                  and Lipez, Circuit Judge.
                                
                                
                                
                                
    Robert E. Schneider, Jr., pro se and for Hctor Ramos-Daz.
    Carlos A. Rodrguez-Vidal, with whom Carlos Lugo-Fiol,
Solicitor General, Edda Serrano Blasini, Deputy Solicitor General,
Vanessa Ramirez, Assistant Solicitor General, and the Department of
Justice, Puerto Rico, were on brief, for the Colegio de Abogados de
Puerto Rico and the Secretaries of Justice and Treasury of the
Commonwealth of Puerto Rico.
    Salvador Antonetti-Zequeira for the Justices of the Supreme
Court of Puerto Rico.

July 15, 1999

                                
                                

 Per Curiam.  After two decades of litigation in the
Puerto Rico and federal courts, plaintiffs Robert E. Schneider,
Jr., and Hctor Ramos-Daz succeeded in invalidating the use of bar
dues for ideological purposes by the mandatory bar of Puerto Rico,
the Colegio de Abogados.  The action in the case at hand was a
civil rights action; the successful claims were of constitutional
dimension.  Other claims were less successful.  The district court,
acting pursuant to 42 U.S.C.  1988, awarded plaintiffs $244,848.12
in attorney's fees plus costs and a refund in unrefunded compulsory
dues.  The Colegio and other defendants (collectively, "the
Colegio") appeal.  Schneider and Ramos cross appeal, saying, inter
alia, that they were entitled to even more.  We affirm in part and
reverse in part.
 The long history of this hard-fought litigation will not
be repeated here.  It is adequately told in the following opinions:  
Schneider v. Colegio de Abogados de Puerto Rico, 546 F. Supp. 1251
(D.P.R. 1982); In re The Justices of Supreme Court of Puerto Rico,
695 F.2d 17 (1st Cir. 1982); Schneider v. Colegio de Abogados de
Puerto Rico, 565 F. Supp. 963 (D.P.R. 1983), vacated by Romany v.
Colegio de Abogados de Puerto Rico, 742 F.2d 32 (1st Cir. 1984);
Schneider v. Colegio de Abogados de Puerto Rico, 572 F. Supp. 957,
957-58 (D.P.R. 1983); Schneider v. Colegio de Abogados de Puerto
Rico, 670 F. Supp. 1098 (D.P.R. 1987); Schneider v. Colegio de
Abogados de Puerto Rico, 682 F. Supp. 674 (D.P.R. 1988), rev'd in
part by Schneider v. Colegio de Abogados de Puerto Rico, 917 F.2d
620 (1st Cir. 1990); Schneider v. Colegio de Abogados de Puerto
Rico, 947 F. Supp. 34 (D.P.R. 1996); and Schneider v. Colegio de
Abogados de Puerto Rico, No. 82-1459 (D.P.R. Aug. 7, 1997).
 The Colegio protests that there should have been no award
at all for two reasons.  First, Schneider was representing himself
as well as Ramos and this, the Colegio says, makes Schneider a pro
se attorney-plaintiff who may not receive fees under the rule of
Kay v. Ehrler, 499 U.S. 432, 437-38 (1991).  In addition, the
Colegio argues, plaintiffs are not prevailing parties.  In any
event, the Colegio says, the fee award is simply too high for a
number of reasons.
 Questions of law regarding the award of attorney's fees
are reviewed de novo.  See Williams v. Hanover Housing Auth., 113
F.3d 1294, 1297 (1st Cir. 1997).  Otherwise, the award is reviewed
with deference and "will be disturbed only for mistake of law or
abuse of discretion."  Rodriguez-Hernandez v. Miranda-Velez, 132
F.3d 848, 858 (1st Cir. 1998).
 We affirm the award of attorney's fees plus costs and the
refund of unrefunded dues, except for those fees and costs
associated with the proceedings in the courts of the Commonwealth
of Puerto Rico that took place before the filing of this federal
lawsuit.  As to that limited amount of fees and costs, totaling
$13,872.20, the court reverses and vacates.
 The first question is whether any fees should be awarded
in light of the fact that attorney Schneider was a plaintiff as
well as counsel.  Here, Ramos is a plaintiff and Schneider also
represented Ramos; the fees incurred by plaintiffs are essentially
the same whether or not Schneider was also a plaintiff.  The
Colegio does not argue otherwise.  Thus, in our view, the
prohibition in Kay against awarding attorney's fees to an attorney
pro se litigant does not apply.  See Kay, 499 U.S. at 437-38.  We
do not reach the issue of whether plaintiffs would have had
difficulty in obtaining other counsel, a matter on which the record
is barren of evidence.
 The second question is whether plaintiffs are prevailing
parties given the partial success of their claims.  On balance, we
conclude that they are prevailing parties given their success in
invalidating the payment of mandatory bar dues for ideological
activities of the bar.  See Farrar v. Hobby, 506 U.S. 103, 109
(1992) (explaining that "plaintiffs may be considered 'prevailing
parties' for attorney's fees purposes if they succeed on any
significant issue in litigation which achieves some of the benefit
the parties sought in bringing suit") (quoting Hensley v.
Eckerhart, 461 U.S. 424, 433 (1983) (internal quotation marks
omitted)).
 The third question is whether attorney's fees may be
awarded to plaintiffs for work done in the Commonwealth courts
before the filing of the federal lawsuit.  The district court's
attempts to find this situation identical to abstention by a
federal court after a federal claim has been filed and to further
characterize the Puerto Rico proceedings "as a necessary prelude to
the federal action" are in error, both as a matter of law and of
fact.  Schneider v. Colegio de Abogados de Puerto Rico, No. 82-
1459, slip op. at 4-5, (D.P.R. Aug. 7, 1997) (emphasis added).  The
correct test is articulated in Webb v. Board of Education, 471 U.S.
234 (1985): pre-suit fees may be awarded under 42 U.S.C.  1988
only for "discrete" work "that was both useful and of a type
ordinarily necessary to advance the civil rights litigation to the
stage it reached."  Id. at 243.  After all, the statutory language
in  1988 permits an award of attorney's fees only "[i]n any action
or proceeding to enforce a provision of section[] . . . 1983."  42
U.S.C.  1988(b) (emphasis added).  No federal claims were raised
in the Puerto Rico proceeding and plaintiffs do not meet the Webb
test.
 The next question is whether the overall fee award is
excessive.  The district court found that the claims on which the
plaintiffs prevailed were "reasonably related" to those on which
the plaintiffs lost, and the court therefore declined to reduce the
overall award on the basis of plaintiffs' limited success.  
Although the question is close, we think that the district court
properly found an adequate relationship between the successful and
unsuccessful claims.  See Hensley, 461 U.S. at 440 (noting that an
award of attorneys' fees based on related claims should not be
reduced merely because the plaintiff did not prevail on every
claim).  As to the remainder of the defendants' objections and as
to plaintiffs' cross appeal, there is no showing of mistake of law,
clear error of fact, or abuse of discretion by the district court.
 For these reasons, the judgment is affirmed in part,
reversed in part, and the judgment is modified to reduce the
attorney's fees awarded from $244,848.12 to $230,975.92 (with
interest from September 22, 1988, as per the district court's final
judgment).
 Costs to plaintiffs.

 LIPEZ, Circuit Judge, concurring.  Although I agree with
the results arrived at by my colleagues in their per curiam
opinion, I wish to explain more fully the history of this case and
my rationale for the conclusions we reach. This case is the
culmination of a two decade long odyssey of litigation that has
engaged thousands of hours of attorney and court time, raised
important constitutional issues, and engendered strong feelings
among the parties. Under these circumstances, I think it is
appropriate to offer an explanation that hopefully will enhance an
understanding of the issues we have addressed and avoid further
litigation.
                              I.
                      Litigation History
 The Colegio de Abogados de Puerto Rico ("Colegio"),
Puerto Rico's unitary bar association, instituted disciplinary
proceedings in the Supreme Court of Puerto Rico in 1977 against
ninety-nine attorneys for failure to pay their annual dues. All but
two, Robert E. Schneider, Jr. and Hctor R. Ramos-Daz, paid the
dues. As a defense to the disciplinary proceedings, Schneider and
Ramos argued that the statute establishing the Colegio in its
modern form, Law Number 43, 4 L.P.R.A.  771, as amended, exceeded
the authority of the Puerto Rico legislature, and that compelled
membership in the Colegio violated their rights of free speech and
association under the Constitution of the Commonwealth of Puerto
Rico. Schneider and Ramos alleged that bar dues were being used
to fund ideological activities outside the legitimate scope of a
bar association. A special master was appointed by the Court to
receive evidence, and after several years of proceedings (during
which Schneider served as counsel for himself and Ramos), the
Supreme Court of Puerto Rico issued an opinion on April 5, 1982.
Colegio de Abogados de Puerto Rico v. Schneider, 112 D.P.R. 540, 12
T.P.R. 676 (P.R. 1982) (Colegio I).
 The Court ruled that Law 43 was a valid exercise of
legislative power and that compulsory membership in the Colegio was
constitutional under the Puerto Rico Constitution. Holding that it
had plenary power to shape rules governing Colegio membership, the
Court ordered the Colegio to institute a new process permitting
attorneys to dissent from the use of their dues for ideological
activities, including the establishment by the next dues period of
an independent review board to pass on controversies arising over
activities funded from dues. Dissenters' dues would be held in
escrow until then. See 12 T.P.R. at 695. In passing on the
constitutionality of the Colegio's use of compulsory dues for
ideological purposes, and in shaping the remedy, the Court based
its rulings on dissenters' rights arising under the Puerto Rico
Constitution, not the federal Constitution. However, it stated that
"the sense of the freedom of speech clause contained in Art. II,
Sec. 4 of the Constitution of Puerto Rico is not narrower than that
given by the United States Supreme Court to the First Amendment in
this context," id. at 692, and relied heavily on federal precedent
in its discussion, see id. at 689-94. The Court gave Schneider and
Ramos fifteen days to pay their dues or be suspended from the
practice of law. Id. at 695. Notwithstanding the promised procedure
for objecting to Colegio activities, Schneider and Ramos refused to
pay dues, and were disbarred on June 3, 1982.
 On June 9, 1982, Schneider filed a complaint on behalf of
Ramos and himself in federal district court alleging that the
Colegio, its Foundation, the Secretaries of Justice and Treasury of
Puerto Rico, and the Justices of the Supreme Court of Puerto Rico
violated their civil rights pursuant to 42 U.S.C.  1983.
Responding to assorted motions filed by the parties, the district
court ruled on September 13, 1982, inter alia, that plaintiffs'
challenge to compulsory Colegio membership and to the use of dues
and stamp revenues for ideological purposes stated a cause of
action not barred by res judicata or collateral estoppel
principles, that abstention was not appropriate, and that the
Justices of the Supreme Court of Puerto Rico were immune from
damages but not from declaratory and injunctive relief. See
Schneider v. Colegio de Abogados de Puerto Rico, 546 F. Supp. 1251
(D.P.R. 1982) (Torruella, J.) (Schneider I).
 During the pendency of the proceedings in the district
court, the Colegio, its Foundation, and the Justices of the Supreme
Court of Puerto Rico submitted petitions for a writ of mandamus to
this court, asking that we order the district court to expedite its
decision or dismiss the action. Two days after the district court
issued its opinion, we entertained oral argument on the petitions
for mandamus (now reduced to seeking dismissal), and we modified
the court's decision sub nom. In re The Justices of the Supreme
Court of Puerto Rico, 695 F.2d 17 (1st Cir. 1982) (Schneider II).
We held that the Justices were entitled to a writ of mandamus
requiring the district court to dismiss claims against the Justices
concerning compulsory bar membership or compulsory payment of bar
dues because the Justices had only a neutral, adjudicatory role
with respect to those claims. See id. at 25. We further held that
the Justices should remain "purely nominal parties" with respect to
challenges to the use of stamp revenues because of their
administrative responsibilities over the stamp program. Id. at 27.
The request of the Colegio and its Foundation for mandamus relief
was denied. See id.
 In December 1982, in compliance with the earlier order of
the Supreme Court of Puerto Rico, the Colegio adopted a remedial
refund procedure and informed that Court of its action. While the
Supreme Court of Puerto Rico evaluated the remedy, the district
court held an evidentiary hearing on the merits of the proposal,
followed by full argument and briefing. In June 1983, the district
court issued a ruling characterizing the Colegio's remedy as a
"sham, designed to forestall the adjudication of this case and the
remedies to which Plaintiffs are entitled under the Laws and
Constitution of the United States." Schneider v. Colegio de
Abogados de Puerto Rico, 565 F. Supp. 963, 977 (D.P.R. 1983)
(Schneider III). As noted by the district court, the proposal
provided that, in order to retain a right to object to any activity
funded by the Colegio, a general objection to funding ideological
activities had to be voiced by a dissenting member at the moment of
paying dues. Members were then required to object specifically to
individual activities within thirty days after they took place, and
a Review Board of lawyers essentially selected by the Colegio's
Board of Governors would review objections on a standard that
defined "ideological activities" narrowly to mean activities
"related to partisan politics." Id. at 975. If an objection was
successful, the member who objected would receive a proportionate
refund of dues; others who objected only generally to the use of
their fees for ideological activities would receive notice of the
outcome and would have to file claims individually within thirty
days of notice in order to receive similar refunds. See id.
 The court found the proposed remedy inadequate because it
(1) failed entirely to address the issue of use of funds raised
through sale of notarial stamps, (2) unconstitutionally required
dissenters to disclose their disapproval of specific activities,
(3) was procedurally inadequate to protect the dissenters,
requiring excessive vigilance from them, and (4) used too narrow a
definition of "ideological." Id. at 976-77. The court therefore
declared various sections of Law 43 and related acts "as
interpreted, enforced and applied" to be unconstitutional. Id. at
979-80. The court also enjoined all defendants (except the
Justices) from taking any action against lawyers who failed to pay
dues or fees to the Colegio "until such time as the Colegio ceases
to engage in ideological and/or political activism," from
collecting fees from the sale of forensic or notarial stamps, or
from preventing anyone otherwise qualified from engaging in legal
or notarial practice for failure to pay dues or fees or failure to
be a member of the Colegio. Id. Plaintiffs Oreste Ramos, Romany and
Souss (to whom the court limited, without explanation, its award)
were awarded nominal damages of one dollar each. See id. at 980.
The court subsequently refused to stay this judgment pending
appeal. See Schneider v. Colegio de Abogados de Puerto Rico, 572 F.
Supp. 957, 962 (D.P.R. 1983) (Schneider IV).
 We vacated this decision sub nom. Romany v. Colegio de
Abogados de Puerto Rico, 742 F.2d 32, 40-43 (1st Cir. 1984)
(Schneider V), reasoning that the court should have abstained from
deciding the federal constitutional claims, and citing to cases in
the line descended from Railroad Commission of Texas v. Pullman,
312 U.S. 496 (1941). We stated that "the district court should have
stayed its hand in this case, pending final determination of the
issues turning upon Puerto Rico law, as it is clear that completion
of the remedial stage of [Colegio I] 'might avoid in whole or in
part the necessity for federal constitutional adjudication; or at
least materially alter the nature of the problem.'" 742 F.2d at 40
(quoting Harrison v. NAACP, 360 U.S. 167, 177 (1959)). We added
that "[t]he argument for abstention is also greatly strengthened by
several special factors" present in the case. Id. at 42. First, an
action in the Commonwealth court was already pending. See id.
Second, because the Supreme Court of Puerto Rico had inherent
plenary power to shape the rules governing the bar, it could
directly fashion relief, whereas a federal court was limited to
striking down provisions. See id. at 42-43. Finally, we cited
comity considerations: "the expertise, cooperation and goodwill of
the Supreme Court of Puerto Rico will make much difference to the
success of any remedy from whatever source over the long run. This
fact alone suggests the need for restraint in these
circumstances. . . . [W]hile we can appreciate the concerns of the
district court, we think this matter must be approached with
deliberation and full respect for the role of the judiciary of the
Commonwealth of Puerto Rico." Id. at 43. The stamp issues were also
held suitable for abstention, despite the fact that they were not
addressed in Colegio I. See id. at 43-44. Finally, we recommended
that the Supreme Court of Puerto Rico implement an interim remedy
to protect the interests of the dissenters: pending the resolution
of both Commonwealth and federal proceedings, we suggested that 50%
of dissenting members' dues should be held in an escrow account
managed by a neutral entity. See id. at 44-45.
 In the wake of our abstention ruling, the Supreme Court
of Puerto Rico again held hearings to consider a remedy. In late
1984, the Court issued an order providing for the interim remedy we
suggested, and then reinstated Schneider and Ramos to the practice
of law in light of their consent to that remedy. After hearings,
the Court issued an opinion outlining a permanent remedy. See
Colegio de Abogados de Puerto Rico v. Schneider, 117 D.P.R. 504, 17
T.P.R. 610 (P.R. 1986) (Colegio II). The opinion established a list
of non-objectionable activities (such as maintaining professional
and ethical standards, advocating the rights and immunities of
lawyers, establishing legal aid programs, and so forth), without
offering a definition of "objectionable" activities. 17 T.P.R. at
630-31. It then provided that dissenting attorneys could lodge a
general objection to funding all "objectionable" activities, either
at the time of paying annual dues or later during the year. Id. at
633. A portion of dissenters' dues (15% for those objecting upon
payment; proportionately less for mid-year dissenters) would be
reserved in a general escrow account. See id. at 634. Any member of
the Colegio could raise objections to specific activities before a
review panel of retired Commonwealth judges, reviewable by the
Supreme Court of Puerto Rico. If the review panel found the
activity to be objectionable, a proportionate dues refund would be
paid to the objector and to all those who lodged a general
objection. See id. at 632-35. The costs and expenses of the use of
Colegio facilities by third parties engaged in objectionable
activities would be "subject to this remedy" if those parties did
not cover those costs and expenses. Id. at 631. Proceeds from the
sale of notarial and bar stamps were not to be used for
objectionable activities. See id. at 636.
 The Colegio then moved to dismiss the federal action as
res judicata. The district court (per Torruella, by then a Circuit
Judge, sitting by designation) rejected this argument, see
Schneider v. Colegio de Abogados de Puerto Rico, 670 F. Supp. 1098,
1101 (D.P.R. 1987) (Schneider VI), for roughly the same reasons it
gave earlier, in Schneider I, 546 F. Supp. at 1268-74 (a ruling not
appealed and thus, the court held, the law of the case). 28 U.S.C.
1738 requires federal courts to give the same preclusive effect
to judicial proceedings of any state, territory or possession
(including the "Commonwealth" of Puerto Rico; see Felix Davis v.
Vieques Air Link, 892 F.2d 1122, 1124 (1st Cir. 1990)) that those
judgments would be given in the courts of the state, territory or
possession from where the judgments were entered. See Kremer v.
Chemical Constr. Corp., 456 U.S. 461, 466 (1982). Puerto Rico's res
judicata rules require that "there be the most perfect identity
between the things, causes, and persons of the litigants, and their
capacity as such." 31 L.P.R.A.  3343 (quoted in Schneider VI, 670
F. Supp. at 1104). The court found that the federal case concerned
ongoing obligations to support the Colegio, whereas the
Commonwealth case concerned only past obligations not met, thus
disrupting the required identity. Collateral estoppel was
inapplicable because the federal claims were not raised in the
Commonwealth proceedings. Schneider VI, 670 F. Supp. at 1104.
 Reaching the merits once again in a subsequent hearing,
the district court found that the 1986 rule failed to adequately
protect dissenters' rights. See Schneider v. Colegio de Abogados de
Puerto Rico, 682 F. Supp. 674 (D.P.R. 1988) (Schneider VII). The
court found the rule's definition of "objectionable" activities  
too narrow. The rule stated that activities within "the Bar
Association's purposes and ends which are germane thereto shall not
be considered objectionable," and then stated that the Colegio's
"functions and purposes" are "[t]o exercise . . . powers conferred
by law or by the Supreme Court of Puerto Rico and any other
incidental powers necessary or convenient for the ends of its
creation and which are not in disagreement with the purpose and the
law which creates the Bar Association." Id. at 687.
 Most importantly, the parties had stipulated for this
proceeding that objectionable Colegio activities, similar to those
undertaken prior to 1983, had continued. See id. at 678. This
stipulation induced the court to implement substantial remedial
measures. The court found the 15% escrow reserve percentage to be
arbitrary, and held that the Colegio had to base the escrow
percentage on each year's projected budget, including a buffer
allowing for error in the budget projections. See id. at 687-88.
The court also found unacceptable the requirement that dissenters
object to specific activities, and the fact that those objections
would be made public. See id. at 684, 689. The court allowed 60
days for the Commonwealth to institute a remedial rule. See id. at
691. Pending the adoption of such a rule, the defendants could not
compel payment of dues or fees, use of stamps, or membership in
the Colegio. See id. Finally, the court awarded nominal damages of
one dollar to each of the five plaintiffs. See id. at 692.
 On appeal from the district court's ruling, we stayed the
injunction prohibiting mandatory dues for six months "so that the
Colegio may remain integrated while it attempts to correct its
constitutional defects."  See Schneider v. Colegio de Abogados de
Puerto Rico, 917 F.2d 620, 623, 636 (1st Cir. 1990) (Schneider
VIII). During this period, 100% of dissenters' dues would be held
in escrow. See id. at 636. After the six months had passed, the
injunction was again stayed (this time by the district court)
pending consideration of petitions for certiorari filed by the
Colegio, Secretaries, and plaintiffs, all of which were denied by
the Supreme Court on January 13, 1992. See 502 U.S. 1029 (1992).
 The Supreme Court of Puerto Rico issued a new rule in
June of 1992. The district court reviewed it, and, finding it
inadequate in several respects, ordered the parties to submit the
district court's amendments to the Supreme Court of Puerto Rico for
its consideration. Order, No. 82-1459 (D.P.R. Nov. 19, 1992).
Amended rules were issued by the Supreme Court of Puerto Rico in
January 1993. Judge Torruella withdrew from the case on March 13,
1995. Following the recusal of all other judges in the District of
Puerto Rico, Judge James L. Watson was designated to sit in the
District of Puerto Rico and assigned the case. He approved the new
rule and held that the dissenting attorneys were entitled to
attorney's fees as prevailing parties under 42 U.S.C.  1988. See
Schneider v. Colegio de Abogados de Puerto Rico, 947 F. Supp. 34,
41, 42 (D.P.R. 1996) (Schneider IX). After holding hearings and
receiving evidence, the court awarded attorney's fees in the amount
of $244,848.12 plus interest to Schneider for his representation of
Ramos and himself throughout the litigation, from 1977 onwards,
including time spent in the disciplinary proceedings and post-
abstention proceedings in the Supreme Court of Puerto Rico. See
Memorandum, Opinion and Order, No. 82-1459 (D.P.R. August 7, 1997)
(Schneider X, unpublished slip opinion). After issuance of a final
Judgment, No. 82-1459 (D.P.R. March 23, 1998) (Schneider XI,
unpublished), the parties resubmitted notices of appeal.
 On appeal, the Colegio and the Secretaries challenge the
court's award of attorney's fees, claiming that Schneider was pro
se and therefore not entitled to fees under  1988, that he and
Ramos were not prevailing parties, and that the award of fees was
excessive, primarily because it compensated for hours spent in
proceedings before the Supreme Court of Puerto Rico. They also
claim the court erred in its order mandating a refund of dues to
plaintiffs. In their cross-appeal, Schneider and Ramos claim the
court erred in failing to: (1) order a more extensive refund of
dues; (2) address a seeming inconsistency in the rules governing
who may object to specific Colegio activities; (3) adequately
sanction the Colegio for its failure to notice plaintiffs of
motions before the court and for its withdrawal of funds from the
escrow account; (4) award fees to attorney Hctor Mrquez for his
representation of several other plaintiffs in this litigation; and
(5) hold the Justices of the Supreme Court of Puerto Rico liable
for attorney's fees.

                             II.
                          The Appeal
A. Plaintiffs' entitlement to attorney's fees
 Federal courts have consistently held that a pro se
litigant who is not a lawyer is not entitled to attorney's fees
under  1988. See Lovell v. Snow, 637 F.2d 170 (1st Cir. 1981); see
also Poythress v. Kessler, 475 U.S. 1129, 1129 (1986) (Burger,
C.J., dissenting from denial of certiorari) (citing lower court
cases); Gonzalez v. Kangas, 814 F.2d 1411, 1411 (9th Cir. 1987)
(citing cases).  In Kay v. Ehrler, 499 U.S. 432 (1991), the Supreme
Court extended this rule to pro se litigants who also happen to be
lawyers. The Court stated that "it seems likely that Congress
contemplated an attorney-client relationship as the predicate for
an award under  1988," id. at 436, and reasoned that Congress
wished to encourage such an agency relationship so that parties
would benefit from the detached objectivity of a disinterested
advocate. See id. at 435-37.
 This case is not Kay because Schneider was involved in an
attorney-client relationship throughout this litigation,
representing both himself and Hctor R. Ramos-Daz. The attorney-
client relationship imposed an ethical obligation on Schneider to
consider the interests of his client at all times and exercise his
best professional judgment, thus satisfying the concerns
underlying Kay's requirement of an attorney-client relationship.
Nevertheless, the Colegio argues that we should extend Kay to
situations where an attorney-client relationship exists, but the
attorney also has a personal interest in the outcome of the case.
On this theory, the Colegio asserts that Ramos (and Schneider as
well) should have sought counsel who was fully disinterested in the
outcome of the case if they wished to avail themselves of
attorney's fees under  1988.
 I disagree. If Ramos had retained an attorney admitted in
Puerto Rico   that is, a member of the Colegio   to represent him,
it could hardly be said that he had retained objective counsel. Any
relief achieved by the litigation would have affected the rights
and obligations of such an attorney in relation to the Colegio,
just as it would those of his client Ramos; therefore, such an
attorney's stake in the outcome of the matter would resemble that
of a party. Moreover, such an attorney would have complied with the
very rules that Ramos wished to challenge, and would thereby have
taken a position directly contrary to that of his client.
 Although Ramos could have sought counsel admitted only
outside the jurisdiction, he would have faced many practical
difficulties. During most of the pendency of this case, an attorney
who was not a member of the Colegio could only practice in the
Commonwealth through courtesy of the Puerto Rico Supreme Court.
Prior to July 1, 1989, an attorney could not be admitted to
practice before the federal district court for the District of
Puerto Rico without being "currently in good standing as an
attorney admitted to practice before the courts of the Commonwealth
of Puerto Rico." P.R. U.S. Dist. L.R. 201 (1987). Therefore, any
attorney from outside the jurisdiction would have had to obtain
courtesy admission in the Commonwealth Court in order to argue even
the federal case (at least prior to July 1, 1989). In addition,
Ramos would have had to find an attorney from outside of Puerto
Rico proficient in Spanish and competent to deal with issues of
Commonwealth constitutional law to function effectively in the
Commonwealth Court proceedings.
 I believe the challenge of finding "independent" counsel
with fully objective judgment capable of competently handling the
entirety of the case, and gaining his or her admission to practice
before the Commonwealth and federal courts, would constitute an
unreasonable burden on Ramos in the pursuit of his legal claims. If
"Congress was interested in ensuring the effective prosecution of
meritorious claims" when it enacted  1988, as the Supreme Court
stated in Kay, 499 U.S. at 437, surely it did not envision
requiring plaintiffs in the position of Ramos to seek disinterested
counsel under circumstances that would make such a requirement
antithetical to the effective prosecution of their claim. I
therefore conclude that Schneider's party status, on the unusual
facts of this case, does not preclude an award of attorney's fees.

B. Schneider's and Ramos' status as prevailing parties under 42
U.S.C.  1988
 The Civil Rights Attorney's Fees Awards Act of 1976, 90
Stat. 2641, as amended, 42 U.S.C.  1988(b), provides that:
   In any action or proceeding to enforce a
 provision of section[] . . . 1983 . . . of
 this title, . . . the court, in its
 discretion, may allow the prevailing party,
 other than the United States, a reasonable
 attorney's fee as part of the costs . . . .
The Colegio and Secretaries argue that the relief obtained by
plaintiffs consisted mainly of an award of nominal damages, which
"did not materially alter the relationship between the plaintiffs
and the Colegio and the Secretaries," and left the outcome of the
litigation as a whole "at most a minimal success" for plaintiffs.
The Colegio and Secretaries contend that the primary "relief sought
in this case was clearly to convert the Colegio into a voluntary
association, and shield the plaintiffs from the risk of disbarment
for their continued refusal to pay dues to the Colegio." This
argument conflates an argument for a reduction in the size of the
award due to "limited success" (which I consider in section C(1),
below) with an argument that the plaintiffs here are not entitled
to any fees award since they do not qualify as "prevailing
parties."
 Plaintiffs may be considered prevailing parties "if they
succeed on any significant issue in litigation which achieves some
of the benefit the parties sought in bringing suit." Texas State
Teachers Assoc. v. Garland Indep. Sch. Dist., 489 U.S. 782, 789
(1989) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)
(quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir.
1978))). The Supreme Court has stated that a plaintiff is a
prevailing party under  1988 "when actual relief on the merits of
his claim materially alters the legal relationship between the
parties by modifying the defendant's behavior in a way that
directly benefits the plaintiff," and that "[a] judgment for
damages in any amount, whether compensatory or nominal, modifies
the defendant's behavior by forcing the defendant to pay an amount
of money he otherwise would not pay." Farrar v. Hobby, 506 U.S.
103, 111-12, 113 (1992).  Since Schneider and Ramos each received
one dollar in nominal damages, they are "prevailing parties" who
"crossed the threshold to a fee award of some kind." Garland, 489
U.S. at 792.

C. The size of the fee award
1. Degree of success
 While "the degree of a plaintiff's success in relation to
the other goals of the lawsuit" is not relevant to his "eligibility
for a fee award," it is "a factor critical to the determination of
the size of a reasonable fee." Garland, 489 U.S. at 790. The
Colegio contends that the overall fee award should have been
reduced because Schneider and Ramos achieved limited success when
the litigation is viewed as a whole, and, in particular, plaintiffs
failed to achieve the goal "closest to [their] heart[s],"
overturning mandatory membership. Evaluating the extent of success
for purposes of fees award reduction is assigned to the trial
court's discretion and our review is appropriately deferential. See
Hensley, 461 U.S. at 437 ("court necessarily has discretion" in
making equitable judgment as to fees award reduction for limited
success).
 The Supreme Court has stated that "'the most critical
factor' in determining the reasonableness of a fee award 'is the
degree of success obtained.'" Farrar, 506 U.S. at 114 (quoting
Hensley, 461 U.S. at 436). Where a plaintiff recovers "only nominal
damages . . . the only reasonable fee is usually no fee at all."
Farrar, 506 U.S. at 115. However, this principle applies only
"'[w]here recovery of private damages is the purpose of civil
rights litigation.'" Id. at 114 (quoting Riverside v. Rivera, 477
U.S. 561, 585 (1986) (Powell, J., concurring)). Damages were never
a significant issue to the plaintiffs in this litigation. Rather,
Schneider and Ramos sought and achieved far more than an award of
individual money damages in this case. They sought primarily to
vindicate their constitutional rights through injunctive relief.
Although compulsory Colegio membership was ultimately held to be
constitutional, this holding was subject to a significant
qualification: the Colegio would no longer be allowed to use dues
and stamp proceeds to support ideological purposes outside of the
core purposes of a bar association, and it was forced to institute
procedures to refund to dissenting attorneys dues that were
earmarked for such ideological purposes. As the district court put
it: "[T]he success of plaintiffs in winning an alteration of the
method by which dues were assessed and collected by the Colegio was
a victory of major proportions for the constitutional rights of
Colegio members. . . . Its significance is not diminished by the
fact that there were a good number of issues on which plaintiffs
did not prevail." Schneider X, slip op. at 1.
 The Supreme Court has stated that "[w]here a lawsuit
consists of related claims, a plaintiff who has won substantial
relief should not have his attorney's fee reduced simply because
the district court did not adopt each contention raised." Hensley,
461 U.S. at 440. Claims are related where they "involve a common
core of facts or [are] based on related legal theories," or where
counsel's time is "devoted generally to the litigation as a whole,
making it difficult to divide the hours expended on a claim-by-
claim basis."  Id. at 435; see also Coutin v. Young & Rubicam
Puerto Rico, Inc., 124 F.3d 331, 339 (1st Cir. 1997) (claims
unrelated where they "rest on different facts and legal theories"
(emphasis added)). Here the district court specifically found that
"[t]hose claims in which plaintiffs failed to prevail were
reasonably related to the claim on which they succeeded. The
[failed] claims were not distinct in all respects" and therefore
hours expended pursuing them were properly considered in assessing
fees. Schneider IX, 947 F. Supp. at 42 (citing Hensley, 461 U.S. at
440).
 The Colegio and Secretaries claim the district court
abused its discretion in reaching this conclusion. However, the
unsuccessful efforts of Schneider and Ramos to overturn mandatory
membership and stamp use were closely related to their successful
efforts to establish a dues reduction procedure and limits on the
Colegio's use of stamp proceeds. Both remedies pursued by
plaintiffs (voluntary membership/stamp use and dues
reduction/limits on stamp revenue use) were means to the same end:
vindicating the constitutional rights of dissenters who did not
wish to be forced to subsidize the Colegio's ideological
activities. Plaintiffs' based their pursuit of both alternate
remedies on an identical "core of facts" documenting the Colegio's
ideological activities, and on "related legal theories" regarding
the underlying constitutional right in question; either identity
would be sufficient to establish the relatedness of the remedial
claims under the disjunctive standard of Hensley and Coutin, above.
Moreover, it would be nearly impossible to "divide the hours
expended on a claim-by-claim basis," Hensley, 461 U.S. at 435, even
if the district court, in the exercise of its discretion, had
determined that it was equitable to do so. I therefore conclude
that the district court did not abuse its discretion in declining
to reduce the attorney's fees award because Schneider and Ramos did
not prevail on every claim they raised or achieve all the relief
they requested.

2. The Commonwealth Court proceedings
 Under certain conditions, federal courts have held that
hours expended in state court proceedings are compensable under
1988. We have, for example, held that hours expended in state
court proceedings are compensable where those state proceedings
were initiated and pursued solely because of a federal court's
Pullman abstention subsequent to the initial filing of a federal
claim in the federal forum. See Exeter-West Greenwich Reg'l Sch.
Dist. v. Pontarelli, 788 F.2d 47 (1st Cir. 1986) (where  1983
action halted under Pullman for certification of issue of Rhode
Island law to state supreme court, and state court's resolution
mooted  1983 claim, attorney's fees properly awarded for hours
spent on state court proceedings); see also Bartholomew v. Watson,
665 F.2d 910 (9th Cir. 1982) (state court action compensable where
state proceedings initiated and pursued solely because of filing of
federal claim and subsequent Pullman abstention by federal court).
Clearly, therefore, all hours expended on proceedings before the
Supreme Court of Puerto Rico subsequent to our 1984 abstention
ruling and leading to its June 1986 opinion, and any subsequent
Supreme Court of Puerto Rico proceedings, are eligible for
compensation. Section 1983 was part of the litigation by then, and
federal court abstention made the prosecution of the Commonwealth
proceedings necessary to the advancement of the federal proceeding.
 The Colegio argues that hours spent in the disciplinary
proceeding in the Supreme Court of Puerto Rico from 1977 to
plaintiff's 1982 disbarment, prior to the filing of the federal
claim, should not be compensable under  1988 since the
disciplinary proceeding preceded the filing of the federal claim
but was not a legally necessary precursor to the filing of that
claim. On this line of argument, Schneider and Ramos should have
raised their federal constitutional defenses to the disbarment
proceedings immediately (instead of reserving them) and should then
have attempted to remove the case to federal court. Better yet,
according to the logic of the Colegio, they might have preempted
the disbarment action by filing a complaint seeking declaratory
relief in federal court under  1983, instead of simply letting
their dues payments lapse and waiting for the Colegio to commence
disciplinary proceedings in the Commonwealth Court. However, they
chose to allow the disciplinary proceedings to commence and then
intentionally reserved their federal ( 1983) defenses. The Colegio
claims that this course of conduct left the 1977-1982 disciplinary
proceedings essentially unrelated to the  1983 action that
eventually followed, and thus any hours expended on the
disciplinary proceedings should not be compensable under  1988.
 In ordering more proceedings on the subject of attorney's
fees in its October 1996 ruling, the district court stated that
"[a]bsent a showing that these hours[ claimed for work in
Commonwealth Court proceedings], or any part of them, were either
done for the benefit of this federal litigation or necessary to
maintain or advance this litigation, or otherwise connected to or
required by this litigation, such work is not covered by 42 U.S.C.
1988." Schneider IX, 947 F. Supp. at 42 (citing Webb v. County
Bd. of Educ., 471 U.S. 234 (1985)). Ultimately, however, the court
justified its actual fees award not on Webb but rather on its
conclusion that the Commonwealth Court proceedings of 1977-1982
would have been part of any federal  1983 action because of the
inevitability of Pullman abstention on the facts of this case.
Specifically, the district court stated that "[c]lose scrutiny has
been given to plaintiffs' claim for attorney[']s fees incurred in
the Commonwealth court proceedings from November 1977 . . . to June
9, 1982 [the date of filing the federal action]." Schneider X, slip
op. at 3. Noting that this litigation did not have the "'neat'
history of an action in which the federal court immediately
abstained in order to allow a state action to proceed," the court
nevertheless concluded that "the conduct and conclusion of the
Commonwealth proceeding was eventually recognized as a necessary
prerequisite and adjunct to the federal action." Id. at 4.
 I cannot agree with this rationale, grounded as it is on
the inevitability of the 1977-1982 Commonwealth proceedings even if
Schneider and Ramos had filed their federal claims in federal court
prior to the commencement of the disciplinary proceedings in 1977.
Pullman abstention is a discretionary practice of federal courts,
premised on both prudential and federalism/comity concerns, see
Pullman, 312 U.S. at 500-01, and it is therefore impossible to say
with certainty that a federal court would have ordered abstention
on a given set of facts. See Baggett v. Bullitt, 377 U.S. 360, 375
(1964) ("The abstention doctrine is not an automatic rule applied
whenever a federal court is faced with a doubtful issue of state
law; it rather involves a discretionary exercise of a court's
equity powers."); Erwin Chemerinsky, Federal Jurisdiction 742 (3d
ed. 1999) ("abstention doctrines are derived from the discretion
inherent to courts of equity" (citing Quackenbush v. Allstate
Insurance Co., 517 U.S. 706, 722-26 (1996)); id. at 747-48
(acknowledging contradictory precedent but stating "[t]he
preferable approach is to treat abstention as discretionary").
 It is true that we have awarded fees for hours spent
defending state court proceedings that were not the product of a
federal court's abstention. In Stathos v. Bowden, 728 F.2d 15 (1st
Cir. 1984), an employer, anticipating a  1983 suit by two
employees, brought an action seeking a declaratory judgment under
Massachusetts' sex discrimination statute in state court prior to
the filing of a federal claim by the employees. The employees
promptly brought a federal  1983 claim in federal court, and then
immediately sought to dismiss the preemptive state action brought
by the employer by citing the pending federal case. The state
action was then stayed pending resolution of the federal case. See
Municipal Lighting Commission of Peabody v. Stathos, 433 N.E.2d 95,
96 (Mass. App. Ct. 1982) (detailing chronology). We held that the
hours spent by the employees in defending the state declaratory
judgment action were a "necessary part of [the employees'] efforts
to achieve their  1983 goal" (and thus compensable under  1988)
since the "issues in the state suit were virtually the same as in
the federal case" and the employees "were forced to defend [the
state case] lest they lose their  1983 claim in the federal courts
through collateral estoppel." 728 F.2d at 22.
 While the Colegio's attempt to disbar Schneider and Ramos
might seem analogous to the preemptive action taken by the employer
in Stathos, the situations are distinguishable. Schneider and Ramos
did not move to cut short the state proceedings by instituting a
separate  1983 action in district court and then moving to halt
the Puerto Rico Supreme Court proceedings pending action in the
federal court (as did the employee-plaintiffs in Stathos), nor did
they raise federal defenses in the Commonwealth proceedings and
seek removal to the district court. Here, unlike the employees in
Stathos, Schneider and Ramos were not at risk of losing their
claims through collateral estoppel or res judicata (issue or claim
preclusion, respectively) predicated on the Puerto Rico Supreme
Court's resolution of the issues before it. See Schneider I, 546 F.
Supp. at 1268-74 (pre-1982 state proceedings not res judicata as to
federal proceedings; collateral estoppel also not applicable);
Schneider VI, 670 F. Supp. at 1104 (same). Rather, they attempted
to prevail on Commonwealth law grounds in the Puerto Rico Supreme
Court while reserving all federal/ 1983 claims. They therefore
have no claim to hours expended on the disciplinary proceedings
under Stathos.
 The Supreme Court has stated in Webb v. Board of
Education of Dyer County, Tennessee, 471 U.S. 234, 243 (1985), that
even hours spent pursuing procedurally-optional proceedings prior
to the commencement of the federal litigation may be compensable
where the work done in those optional proceedings was "both useful
and of a type ordinarily necessary to advance" a later federal
claim. There the Supreme Court held that because exhaustion of
administrative remedies was not a prerequisite to a  1983 claim,
plaintiff Webb was not entitled to attorney's fees for "all" work
done in (optional) administrative proceedings he chose to pursue
before his federal  1983 action was filed. The court held the
prevailing plaintiff to his contention (which he argued
consistently in the courts below) that "all of the hours spent by
his attorney" in the optional administrative proceeding were
"reasonably expended" to enforce rights under  1983. Id. at 242
(emphasis added). "The question argued below was whether the time
spent on the administrative work during the years before [the
filing of the  1983 claim in] August 1979 should be included in
its entirety or excluded in its entirety. On this record, the
District Court correctly held that all of the administrative work
was not compensable." Id. at 243 (emphasis added). "The petitioner
made no suggestion below that any discrete portion of the work
product from the administrative proceedings was work that was both
useful and of a type ordinarily necessary to advance" the  1983
claim. Id. (emphasis added). Whether or not facts like those in
Webb might ordinarily support a partial fee award, the "all-or-
nothing" nature of the plaintiff's fee claims in Webb precluded
such a result.
 In the case before us, we have no indication that
Schneider and Ramos made claims in any way distinguishable from
those made by Webb. Webb's attorney's fees claims in the district
court contained an "itemized description of the time spent" in the
ancillary administrative proceedings. Id. at 238. Schneider's and
Ramos' application did the same, detailing specific tasks and hours
spent thereon in the disciplinary proceedings. However, in Webb
this approach was found to be insufficient, given that Webb
presented only evidence "that the administrative work in its
entirety was 'useful' and 'necessary' to the outcome of the
litigation." Id. at 257 (Brennan, J., dissenting in part and
concurring in part) (emphasis added). Schneider and Ramos argued
below that the "total" hours expended in the 1977-1982 disciplinary
proceedings were compensable, on the theory that "litigation in the
Puerto Rico Supreme Court of the 1977 case Colegio v. Schneider et
al[.,] was a necessary and indispensable condition precedent to and
part of this case." Motion for Attorneys Fees, Dkt. 257 (Sep. 28,
1988), at 6. Later, after the Schneider IX decision, they argued
that a "prior ruling by the highest State [sic] Court on the
Constitutionality of said laws under the Constitution of the
Commonwealth of Puerto Rico was a prerequisite to the federal
claim, irrespective of whether said ruling was prior to or after
the institution of the suit in the Federal [sic] Court [sic]
challenging the constitutionality of said laws under the U.S.
Constitution." Motion in Compliance with October 30, 1996 Order,
Dkt. 382 (Feb. 7, 1997), at 3. Both statements present all-or-
nothing claims similar to those rejected in Webb. The statements
also mirror the inevitability theory put forward by the district
court, a theory I have rejected, above. In fact, Schneider and
Ramos did not articulate below (or on appeal) any viable theory for
why some "discrete portion" of the hours spent in the disciplinary
proceedings should be compensable as "useful and . . . ordinarily
necessary" under Webb.
 I therefore concur in the conclusion that we must reject
the claim of Schneider and Ramos for attorney's fees for hours
spent prior to June 3, 1982 on Commonwealth Court proceedings, and
must adjust the district court's award, eliminating those amounts
owing to hours expended prior to June 3, 1982 on Commonwealth Court
proceedings. In total these hours accounted for $13,872.20 of the
district court's fees award, and this deduction results in a
reduced award of $230,975.92, plus costs and with interest from
September 22, 1988 as per the district court's order.

3. Miscellaneous claims for adjusting the fee award
 The Colegio contends that the court should have adjusted
the fee award downwards for work on losing claims advanced by
plaintiffs. I have already considered and rejected these "partial
success" fee reduction arguments in my discussion of the degree of
success issue, above. The Colegio also objects to the court's
failure to reduce the fee award for hours spent on motions by
plaintiffs that were dismissed, for allegedly excessive hours
claimed for individual tasks, and for clerical tasks allegedly
inappropriately performed by lawyers. The district court gave these
claims careful consideration in rejecting the majority of them,
see Schneider X, slip op. at 5-6, and we have properly refrained
from disturbing its exercise of discretion here.
 Citing no authority, see Appellant's Br. at 34-37, the
Colegio and Secretaries challenge the district court's refusal to
discount the fees award for time spent by plaintiffs pursuing
unsuccessful or partially successful appeals to this court. The
Schneider II proceeding, for instance, resulted in the grant of a
writ of mandamus to the defendant/petitioner Justices, reducing
them to nominal parties; our decision in the Schneider V appeal
vacated the district court's decision in favor of plaintiffs and
ordered abstention; and our Schneider VIII decision temporarily
stayed an injunction granting relief sought by plaintiffs. However,
"the prevalent approach" to determining whether a plaintiff is a
prevailing party "on appeal[] is to inquire whether the plaintiff
has prevailed in the litigation as a whole." John E. Kirklin,
Section 1983 Litigation: Statutory Attorney's Fees 29 (3d. ed.
1997); see also Cabrales v. County of Los Angeles, 935 F.2d 1050,
1053 (9th Cir. 1991) ("a plaintiff who is unsuccessful at a stage
of litigation that was a necessary step to her ultimate victory is
entitled to attorney's fees even for the unsuccessful stage");
Buffington v. Baltimore County, 913 F.2d 113, 128 n.12 (4th Cir.
1990) (district court need not revisit fees award for first trial,
which ended in mistrial, where plaintiff prevailed in subsequent
trial); Alizadeh v. Safeway Stores, Inc., 910 F.2d 234, 237-38 (5th
Cir. 1990) (fees awarded for work on appeal which resulted in
reversal of summary judgment in favor of Safeway, which then
prevailed at trial; ultimate success on merits made award of "fees
for the entire course of the litigation" reasonable exercise of
district court's discretion);  Ustrak v. Fairman, 851 F.2d 983, 990
(7th Cir. 1988) (plaintiff had prima facie entitlement to "entire
fees in this court" on appeal (from fees award) where fee award was
affirmed but reduced by a third); Dougherty v. Barry, 820 F. Supp.
20, 25 (D.D.C. 1993) (rejecting attempt to bifurcate failure on
appeal from success at trial; reasonable fees would be "determined
by examination of the entire case").
 Here, Schneider and Ramos ultimately succeeded in
achieving a significant portion of the relief sought, despite a
number of backwards steps along the convoluted pathway this
litigation took through the courts (including this court of
appeals). I have no difficulty concluding that the district court
was within its discretion in refusing to discount hours spent in
unsuccessfully defending appeals, especially where the appellate
setbacks suffered by plaintiffs were largely procedural in nature
(here, reducing the justices from defendants to nominal defendants,
postponing (temporarily, as it turned out) the exercise of federal
jurisdiction, and temporarily postponing the effectiveness of an
injunction). Cf. Jaffee v. Redmond, 142 F.3d 409, 414 (7th Cir.
1998) (an "unsuccessful but reasonable argument in support of a
successful claim may be compensable."). The result might be
different were the unsuccessful appeals initiated by the
plaintiffs, but that was not the case for the three appeals to this
court mentioned above. See Ustrak, 851 F.2d at 990 (for purposes of
determining whether unsuccessful appeal is sufficiently related to
plaintiff's success, "a distinction should be made between an
appellant and an appellee"; where "defendant appeals and plaintiff
incurs expenses in defending against the appeal that are reasonable
even though they are not crowned by complete success,"
plaintiff/appellee should be awarded fees since "he had no choice
but to incur them or forfeit his victory in the district court.").

D. Refund of dues
1. Background
 The district court's final judgment in this matter,
Schneider XI at 1-2, included an order resolving dissenters' claims
to a refund of dues amounts corresponding to ideological activities
of the Colegio during years prior to the institution of the final
dues reduction procedure outlined in the 1993 rules promulgated by
the Supreme Court of Puerto Rico. Before responding to the parties'
objections to the district court's dues refund order, I must review
the history of that court's orders concerning dues payments during
the pendency of this case, including the dues payments that were
actually made by plaintiffs (relying primarily on the briefs on
appeal and cross-appeal for much of the payment data, which is
absent from the record).
 Schneider ceased to pay dues in 1974, Ramos in 1976. See
Schneider I, 546 F. Supp. at 1255. Our 1984 abstention decision
stated that a pure refund remedy was inadequate (a similar plan
having been rejected by the Supreme Court in Ellis v. Brotherhood
of Railway, Airline & Steamship Clerks, 466 U.S. 435, 441-44, 104
S. Ct. 1883, 1889-90 (1984), on the grounds that the amount to be
rebated constitutes an "involuntary loan" to the union), and that
the Supreme Court of Puerto Rico should adopt an interim rule
allowing for a portion of dissenters' dues payments to be held in
escrow. See Schneider V, 742 F.2d at 44. We suggested that a
reasonable interim remedy would allow dissenters to pay 50% of dues
into escrow. See id. at 44-45. This recommended interim remedy was
approved on November 13, 1984 by the Supreme Court of Puerto Rico,
which allowed readmission of dissenters upon compliance; with
respect to Schneider and Ramos, the Court allowed them to pay 50%
of their dues into escrow for all dues years for which they had
voiced objection to Colegio ideological activities. See Dkt. 328,
Exh. A (Nov. 13, 1984 order of the Supreme Court of Puerto Rico).
 The parties stipulated terms for the escrow account,
including requirements that the name of the bank holding the
account and the account number be disclosed to dissenters, and that
the Supreme Court of Puerto Rico would order the Colegio "not to
withdraw any amount of money from this [Escrow] Account until the
claims in dispute have been finally resolved by the Supreme Court
of Puerto Rico, and, if it were necessary, by the federal courts."
Bl. Br. (cross appeal) at 7-8 (quoting Dkt. 328, Exh. B, at 2). The
stipulation was signed by the parties on Jan. 23, 1985, and on Jan.
31, 1985, Schneider and Ramos paid the Colegio 50% of their dues
corresponding to years 1978-1985 inclusive, and an equal amount
into the escrow account. At the same time, Schneider paid his full
dues for years 1974-1977 directly to the Colegio as well, see Red
Br. (cross appeal) at 21, and Ramos similarly paid full dues for
1976-1977 directly to the Colegio, see Red Br. (cross appeal) at
22; neither plaintiff paid any amount into escrow for those dues
years. In 1986 Schneider and Ramos paid appropriate amounts to the
Colegio and the escrow account for their 1986 dues. See Red Br.
(cross appeal) at 22. The Supreme Court of Puerto Rico's 1986
remedy provided that 15% of dues could be paid to escrow for dues
years from 1987 onwards. See Colegio II, 17 T.P.R. at 634. Nothing
in the briefs or record on appeal indicates whether or not
Schneider or Ramos paid any dues for 1987 or 1988.
 In 1988 the district court enjoined the Colegio from
mandating bar membership or dues payments, see Schneider VII, 682
F. Supp. at 691; after a grace period, this injunction appears to
have gone into effect on May 31, 1988 (although the record is far
from clear; the injunction may have been stayed pending appeal). We
suspended effectiveness of the injunction for 6 months in 1990, but
allowed 100% of dues to be escrowed during this stay. See Schneider
VIII, 917 F.2d at 636. After the 6 months expired, petitions for
certiorari were filed by all parties, and the district court
extended our stay pending resolution of these certiorari petitions.
The Supreme Court denied certiorari in January 1992. See 502 U.S.
1029 (1992). In June 1992, the Supreme Court of Puerto Rico issued
new rules governing dues that allowed dissenters to pay a
proportionately lower dues amount based on the Colegio's budget for
unobjectionable activities. Schneider admits not making dues
payments for the dues year 1989 and every year afterwards. See Red
Br. at 12. As for Ramos, the Colegio indicates that he paid dues
from 1989 to 1992 and paid the full, undiscounted amount to the
Colegio for 1993, see Red Br. (cross appeal) at 21; there is no
indication of whether Ramos paid some or all of his dues for 1989-
1992 into the escrow account.
 The 1992 rules promulgated by the Supreme Court of Puerto
Rico established a Review Board to deal with disputes over
categorization of expenses. On May 24, 1995, the Colegio appeared
before the Board to present its dues refund proposal for dues years
1985-1992. On August 29, 1995, the Review Board issued a decision
determining amounts for refund to plaintiffs in conformity with the
Colegio's proposal. For dues years 1989-1992, the amount to be
refunded was determined on the basis of an independent accounting
for that portion of the Colegio budget spent on ideological
activities; for other years where no accounting was done, the
total portion of dues (50% for 1985-1986 and 15% for 1987-1988)
paid into escrow was ordered refunded; in each case, refunds were
to include interest. Notwithstanding the Review Board's
pronouncement, further proceedings in the district court took place
in order to resolve the refund issue. After reviewing the
contentions of both parties, the court determined that "the fairest
way to resolve" the refund issue was to avoid determining exactly
what percentage of the Colegio budget for past years was
attributable to ideological activities, Schneider IX, 947 F. Supp.
at 42, and ultimately ordered that all moneys that had been paid
into escrow but were as yet unrefunded should be returned to
plaintiffs, with interest. See Schneider XI at 1-2.

2. The Colegio's objection to the dues refund order
 The Colegio argues that the district court's "Memorandum,
Opinion and Order" of Oct. 30, 1996, Schneider IX, 947 F. Supp. at
42, "augments" the amount of dues to be refunded to plaintiffs,
over and above the limited refunds of escrowed dues approved by the
Review Board in 1995. The district court's final judgment ordered
the refund of all dues deposited in escrow, whereas the Review
Board approved only a partial refund for the years 1989-1992,
following the results of its independent accounting. For example,
for years 1990-1992, dissenters were allowed to pay 100% of their
dues into escrow, all of which would be refundable to dissenters
under the district court's refund plan, whereas the Review Board
determined that only a small portion of those payments would be
refunded based on its accounting of ideological-activity related
expenses for those years. However, in developing its argument, the
Colegio does not claim that this "augmentation" of the refund is
substantively unfair (with one minor exception addressed below),
but only claims that the Review Board's determination of the issue
should have had a preclusive effect on the district court. I find
nothing about the Review Board proceedings and refund order that
indicates its conclusions should be binding on the parties to the
federal case. The refund issue had been a part of the federal case
for many years, see, e.g., Schneider VII, 682 F. Supp. at 675, it
remained so, and the district court was well within its power in
choosing to resolve it as it did.
 The Colegio also seems to imply that the 1996 Opinion
unfairly "augments" the dues refund by ordering the Colegio to pay
Schneider a refund (in the amount of 50% of compulsory dues) for
years in which Schneider did not in fact pay any dues. The October
1996 order states: "To the extent that, in any year of the ...
period [during which dues were partially escrowed], the refund by
the Colegio to plaintiffs was less than 50% of the compulsory dues,
the difference shall be paid to plaintiffs with interest from the
end of that membership year." Schneider IX, 947 F. Supp. at 42.
This language might be read to mean that, had no dues been paid
into escrow by a plaintiff, and thus no dues refunded, the Colegio
would nonetheless owe said plaintiff the difference between the
amount refunded (zero) and half the compulsory dues, resulting in
a windfall for the plaintiff. However, the court's final order of
March 23, 1998 states its mandate somewhat differently:
   3. That, for the years in which plaintiffs and
 other lawyers, following the commencement of
 this action up to the promulgation of the
 rules referred to above, paid 50% or another
 portion of their annual compulsory dues into
 an escrow account and said amounts have not
 been refunded, then the Colegio shall refund
 the unrefunded amounts together with interest
 on those amounts from the end of the
 membership year for which they were deposited.

Schneider XI at 1-2 (D. Puerto Rico March 23, 1998). This provision
clearly covers only "paid" and "unrefunded" amounts, which by
definition could not include amounts never paid by plaintiffs or
amounts already refunded under the plan approved by the Colegio's
Board of Review, if any. To the extent that any language in the
earlier opinion of the court could be interpreted to the contrary,
it is superseded by the text of this final order.
                             III.
                       The Cross-Appeal
A. The adequacy of the dues refund
 On cross-appeal Schneider and Ramos assert that the dues
refund order did not go far enough, and should have included an
order for dues refunds for the ten years prior to the court's
opinion and findings of fact in Schneider v. Colegio, 565 F. Supp.
963 (D.P.R. 1983). The district court's findings of fact are
detailed in the appendix to its opinion entitled "Supplementary
Findings and Conclusions":
   30. The official positions, activities and
 actions of the Colegio over the past ten years
 evidence a pattern of conduct by the Colegio
 to engage in, and to use the facilities,
 personnel and resources of the Colegio for
 ideological or political activity without
 restriction or limitation in the name and
 representation of all the members of the
 Colegio, including Plaintiffs.

Schneider III, 565 F. Supp. at 982-83 (emphasis added). That
opinion was vacated on appeal, but the district court later
regarded its earlier factual findings as either the law of the case
(since not appealed from) or incorporated into the later opinion.
See, e.g., Schneider VII, 682 F. Supp. at 678-79. Schneider and
Ramos claim the court's 1998 order should have mandated further
refunds to cover the Colegio's use of dues for ideological
activities during the ten year period described in the court's 1983
finding. This period includes years for which no portion of dues
was paid into the escrow account; such amounts would not be covered
by the court's 1998 refund order.
 Schneider and Ramos did not properly preserve this issue
for appeal. The district court first addressed the refund issue in
its October 30, 1996 order, stating that plaintiffs claimed "the
Colegio has not refunded to them the amount of dues properly
attributable to non-core activities during the course of this
litigation." Schneider IX, 947 F. Supp. at 42. The court
subsequently requested that the parties submit proposed final
orders. Plaintiffs' proposed order provided only for refunds of
dues paid into the escrow account "during the period from June 9,
1982 up to February 23, 1993." Dkt. 389, Dec. 5, 1997, Exhibit A,
at 12. Schneider and Ramos thereby waived the issue of refunds of
dues paid during any earlier period, and we have correctly refused
to entertain their request to exhume it on appeal. See Poliquin v.
Garden Way, Inc., 989 F.2d 527, 531 (1st Cir. 1993) (appellate
courts will not ordinarily resolve issues waived or abandoned at
trial).

B. Construction of the Supreme Court of Puerto Rico's rules
governing the right to object to unbudgeted activities of the
Colegio
 The district court issued an order, Dkt. 313, Nov. 19,
1992, which mandated that the parties petition the Supreme Court of
Puerto Rico to consider certain amendments to that Court's 1992
rules governing membership in the Colegio and the Colegio's use of
dues for ideological activities. The controversy at hand concerns
language in Rule 6(A), reproduced in context below ("second-
category activities" are those activities not related to the core
purposes of a bar association, or having "ideological overtones"):
   Rule 5 Dues  
     (A) Bar members who choose to finance
 all Bar Association activities shall pay the
 annual dues fixed by the General Assembly in
 accordance with the law.  
     (B) Computation of annual dues for bar
 members who choose not to finance
 second-category activities shall be based on
 the classification of the activities included
 in the Rule 4(B)(2) statement of income and
 expenses. The annual dues shall be an amount
 equal to the proportion of the regular dues
 that expenditures for first-category
 activities bear to expenditures for all Bar
 Association activities carried out during the
 year.  
     (C) Second-category activities shall
 not be funded from loans or contributions to
 the Bar Association, unless otherwise
 specified by the person who makes the
 contribution at the moment such contribution
 is made and it is thus accepted by the Bar
 Association upon receipt of the same.  
   Rule 6 Remedial mechanisms  
     (A) Any bar member who pays his Rule
 5(B) bar dues is entitled to resort to the
 Review Board of the Bar Association Activities
 (Review Board) created by these rules, with
 regard to:  
     (1) the classification of any
 particular activity included in the audited
 statement of income and expenses used as basis
 for the computation of dues, and/or  
     (2) the real expenses of a given
 activity.  
     (3) any nonbudgeted activity funded by
 first-category activity dues that arises
 during the course of the year, with respect to
 classification or amount of expense.

Rules relating to the use of the Puerto Rico Bar Association funds
collected from the payment of dues and from the sale of notarial
and bar stamps, as amended, January 1993 (certified translation,
Dkt. 376) (emphasis added) (quoted in Schneider IX, 947 F. Supp. at
39). The 1992 version of Rule 6(A), extant prior to the district
court's order, was identical except for (3), which was added as
per the district court's Nov. 18, 1992 order. However, the district
court also recommended in its order that the highlighted language
in the first line of Rule 6(A), above, be changed. The relevant
text of the district court's order follows:  
     Plaintiffs object to the remedial
 mechanisms of Rule 6. As the Rule now stands,
 members must elect not to finance budgeted,
 noncore activities at the beginning of the
 year. Only those members who elected not to
 finance noncore activities may seek review of
 the budget by the Review Board of the Bar
 Association Activities ("Review Board"). This
 rule provides no avenue to object to
 nonbudgeted, noncore items that arise
 throughout the year, which if past experience
 is any indication, comprise the bulk of the
 noncore activities.
     Thus Rule 6 must be amended to allow
 all members (whether they objected to the
 projected budget, or approved it initially,
 and later dissent from a nonbudgeted, noncore
 activity that was funded from the core
 activity budget) to dissent at any time during
 the year, and to receive a refund should the
 Review Board grant their petition. The court
 notes that at the hearing counsel for the
 Colegio maintained that the Rules currently
 contain such a provision, and conceded that
 such a provision should be added if the Rules
 did not.
     The following amendments should be made
 to Rule 6:
       a) delete "his Rule 5(B) bar" from
   lines 1-2 of Rule 6;
       b) add "(3) any nonbudgeted activity
   funded by first-category activity dues
   that arises during the course of the
   year, with respect to classification or
   amount of expense." after provision (2)
   of Rule 6;

Order, Dkt. 313 at 2 (Torruella, J.) (emphasis added to 6(A)). The
mandate at the end of the district court's order states that "[t]he
parties are hereby ordered to petition the Supreme Court of Puerto
Rico to consider the amendments to the Rules indicated herein." Id.
at 5. Notwithstanding the district court's use of the term
"consider," in fact the Supreme Court of Puerto Rico adopted all
the changes except the amendment to lines 1-2 suggesting the
deletion of "his Rule 5(b) bar" from Rule 6.
 Schneider and Ramos allege that the motion the Colegio
filed with the Supreme Court of Puerto Rico did not include
language describing the district court's proposed amendment to
lines 1-2 of Rule 6. They claim such presentation to the
Commonwealth Court was mandatory (and imply that the failure to
present was hidden from the district court by the Colegio's failure
to translate its motion into English). In response, the Colegio
claims the amendment was a mere "suggestion" by the court, but
further claims to have presented the entire November 18, 1992 order
(in English and in Spanish translation) to the Supreme Court of
Puerto Rico. This dispute was raised before the district court
after Judge Watson replaced Judge Torruella in 1995. The district
court's opinion of Oct. 30, 1996 states:
     In their motion for entry of judgment
 and injunctive relief, plaintiffs have argued
 that the Rule reproduced above limits the
 right to review to those who elected not to
 finance non-core activities at the beginning
 of the year, i.e., when the budget was first
 announced or approved. Plaintiffs claim that
 Rule 6 of the Rules still does not provide a
 way to object to non-budgeted, non-core items
 that arise during the year for the first time.
     This claim is totally incorrect. At a
 time when this judge had first entered the
 case, and when a complete copy of the new rule
 was not in the record, the adamancy with which
 this claim was advanced caused this court to
 hold hearings and order that a certified
 translation of the new Rule be filed. But when
 all is said and done plaintiffs have been
 unable to point to any meaningful way in which
 the new Rule fails to conform to the
 constitutional standards laid out by this
 court and the court of appeals.

Schneider IX, 947 F. Supp. at 41 (Watson, J.) (emphasis added). I
concur with this judgment.
 On a literal reading, the 1993 Rules as amended might
appear to prevent those who "choose to finance all bar activities"
(and thus pay Rule 5(A) dues) from changing their minds mid-year
and invoking the review procedures of Rule 6(A) (limited to those
who pay "Rule 5(B) dues") when an unforeseen activity belonging in
the "second-category" is funded from the core activity budget. On
this reading, advocated by Schneider and Ramos, the amended Rules
establish an "all or nothing" objection rule, as it were: only
those who choose not to fund any second category activities (by
paying the reduced Rule 5(B) dues) may object mid-year under Rule
6 to the categorization or accounting for costs of budgeted or
unbudgeted activities.
 However, as the Colegio argues, other parts of the Rules
counter such an interpretation. Specifically, language in Rule 6(C)
allows for objections to unbudgeted activities by those who
initially opted to fund all activities:
   [Rule 6](C) Should the Review Board determine,
 after adjudicating the petitions filed for the
 year in question, that the expenses for
 second-category activities exceeded the
 budget, it shall order the Bar Association to
 make refunds to the bar members who chose not
 to finance such activities, or later objected
 to nonbudgeted, second-category activities,
 and to pay interest at the legal rate
 prevailing at the time when the dues were
 paid. The Review Board shall remit all funds
 to dissenters within a reasonable time. The
 Review Board shall order any fund surplus
 remitted to the Bar Association.

Rule 6(C) (1993 version) (quoted in Schneider IX, 947 F. Supp. at
39-40) (emphasis added). The highlighted language was recommended
by the district court's Nov. 18, 1992 order, and presumably was
designed to be consistent with the other amendments recommended by
that order. It clearly presumes that the right to object is granted
even to those members who declined the option of not paying dues
for second-category activities at the beginning of the year.
 As more support for the Colegio's reading, I note that
language suggested by the district court and now incorporated into
Rule 9(B) seems to distinguish 6(A) petitions from "nonbudgeted
activity" petitions:
   [Rule 9](B) A Rule 6(A) petition objecting to
 budgeted items shall be filed before the final
 date set for payment of the annual dues. All
 petitions objecting to non-budgeted items
 shall be filed within ten (10) working days
 after the event or item occurs.

Rule 9(B) (1993 version) (quoted in Schneider IX, 947 F. Supp. at
40) (emphasis added) (highlighted sections added in response to the
Nov. 18, 1992 order's proposed amendments). Again, this language
clearly allows any dues payer to object to nonbudgeted activities
(notwithstanding the "Rule 5(B) dues" restriction of Rule 6(A)).
The Colegio insists that the Rules must be read this way, the
district court agreed, and I concur: notwithstanding the limiting
language in Rule 6(A), any member of the Colegio who pays dues
(whether they be Rule 5(A) dues or Rule 5(B) dues) may resort to
the Review Board in order to object to "any nonbudgeted activity
funded by first-category activity dues that arises during the
course of the year, with respect to classification or amount of
expense" (as per Rule 6(A)(3)) and, if successful, receive an
appropriate refund.
 Schneider and Ramos claim that the district court should
have been bound in its 1996 ruling by the order of the court in
1992, which they claim established the "law of the case," and
should have insisted that the new rule "comply strictly" with the
1992 order's recommended changes to Rule 6(A). It is true that the
effect of the district court's reading in 1996, and mine, is not
exactly the same as the effect of the 1992 order's recommended
amendment to line 1 of Rule 6(A): had the amendment to Rule 6(A)
been made, and the language "his Rule 5(B) bar" been deleted, a
Rule 5(A) dues payer would have been able to voice objection under
6(A)(1) or (2) to classification or real expenses of budgeted
items. On the district court's reading in 1996, 5(A) dues payers
may not so object to treatment of budgeted items, but only to
treatment of "any nonbudgeted activity funded by first-category
activity dues that arises during the course of the year," as per
Rule 6(A)(3). However, objections to budgeted activities by Rule
5(A) dues payers were not contemplated by the reasoning of the
district court's 1992 order, which was concerned with only the
right of any member "to object to nonbudgeted, noncore items that
arise [during the course of] the year." Order, Nov. 19, 1992, Dkt.
313, at 2. Since the reading of the district court in 1996 gives
the Rules the effect intended by the court's 1992 order, there is
no law of the case problem.

C. Sanctions for the Colegio's failure to notify the plaintiffs of
its June 20, 1991 motion to stay judgment
 Our opinion of December 20, 1990 (Schneider VIII, 917
F.2d at 636) stayed for six months the effectiveness of the
district court's 1988 judgment (Schneider VII) immediately
enjoining the Colegio from compelling membership until it either
ceased all ideological activities or implemented an adequate system
to protect dissenters' rights. We took that action to give the
Colegio time to submit to the district court a modified rule
governing use of compulsory dues, in the hope that such a delay
would permit the preservation of the integrated bar while allowing
the Colegio to formulate a remedy for the constitutional problems
highlighted by this litigation. During the stay, all parties
submitted petitions for certiorari to the Supreme Court of the
United States. On June 20, 1991, the date on which our stay was
to expire, the Colegio requested an extension of the stay pending
the Supreme Court's consideration. The Colegio did not notify
Schneider of its motion requesting the stay. On July 19, 1991, the
district court granted the stay of the injunction as requested,
and, according to the Colegio, notified all parties. Schneider
claims the Clerk's office failed to notify him. The Supreme Court
denied certiorari on January 13, 1992. On June 30, 1992, the
Supreme Court of Puerto Rico promulgated rules governing use of
Colegio funds, effective July 1, 1992. On August 13, 1992,
Schneider and Ramos moved for sanctions against the Colegio for
failing to notify them of its motion. The court denied their
request.
 Schneider and Ramos claim that as a result of the
Colegio's failure to give notice, "[p]laintiffs had every reason to
assume that the injunction regarding the Colegio compulsory dues
was in effect and that they were under no obligation to pay Colegio
compulsory dues and plaintiffs relied on this assumption."
Schneider and Ramos imply that they mistakenly failed to pay their
next installment of Colegio dues and were subject to renewed
disciplinary proceedings. According to their brief (we have nothing
in the record to confirm this), on September 8, 1992, the Colegio
commenced a disciplinary action against Schneider and others as a
result of their failure to continue paying dues upon the extension
of the stay; the case, AB92-90, remains dormant but pending in the
Supreme Court of Puerto Rico.
 In denying the motion for sanctions (in its order
reviewing the new rules), the district court added an important
qualifier to its order, which essentially responds to the claim of
Schneider and Ramos:
   Plaintiffs' motion for sanctions against the
 Colegio de Abogados, for failure to notify
 plaintiffs that the court stayed the
 reimposition of the injunction against the
 Colegio, is denied. The plaintiffs are not
 relieved from payment of their annual
 membership dues and must do so within fifteen
 (15) days from the filing of this Order if
 they wish to retain membership in the Colegio.
 Upon payment of the dues owed by plaintiffs,
 the Colegio is ordered to rescind any request
 for disbarment that may have been filed as a
 result of plaintiffs' failure to timely pay
 their dues.

Order of Nov. 18, 1992 (Dkt. 313), at 1-2 (emphasis added). Federal
Rule of Civil Procedure 5 requires that all parties not in default
be served with essentially all papers and pleadings filed
subsequent to the original complaint. The rule itself does not
specify what sanctions are appropriate for violations. Where the
moving party has failed to serve a motion on the nonmoving party,
courts have struck or denied the motion or set aside the relief
requested in the motion if already granted. See 4A Charles Alan
Wright & Arthur R. Miller, Federal Practice & Procedure  1143 n.13
(citing cases). Although the court stated that it was denying
plaintiffs' motion for sanctions, it established a grace period for
payment of any dues that plaintiffs mistakenly failed to pay as a
result of their lack of notice, and thereby mitigated any prejudice
to plaintiffs resulting from the failure to give notice. Schneider
and Ramos do not indicate exactly what further sanction they
requested below, if any, and any specific argument for further
sanctions is thus waived.

D. The Colegio's withdrawal of funds from the escrow account in
1986
 The Supreme Court of Puerto Rico, by resolution of
November 13, 1984, as modified by stipulation of the parties on
January 23, 1985, adopted an interim remedy in consonance with the
proposals of this court in Schneider V, 742 F.2d 32, 44-45 (1st
Cir. 1984). Under this interim remedy, disbarred plaintiffs could
request readmittance if they paid half their dues to the Colegio
and half into an interest-bearing escrow account, where the funds
would be held until the parties and the courts worked out a final
refund procedure. Plaintiffs were allowed to escrow half their dues
payable back to the first membership year for which they objected
to the Colegio's ideological activities. As of December 1986,
Schneider had deposited 50% of his dues for membership years 1978
through 1986 in the escrow account; the other plaintiffs similarly
had paid half of their dues for certain years into the escrow
account. The parties stipulated that the Colegio would inform the
dissenting attorneys depositing their dues into the escrow account
of the account number and the name of the bank selected by the
Colegio to hold such account. The stipulation also provided that
the Colegio would not withdraw funds from the account "until the
claims in dispute have been finally resolved by the Supreme Court
of Puerto Rico." Dkt. 328, Exh. B, at 2.
 On June 26, 1986, the Supreme Court of Puerto Rico
adopted a remedy providing for the deposit in an escrow account of
15% of compulsory dues paid by any lawyer dissenting to ideological
activities of the Colegio. See Colegio II, 17 T.P.R. at 634. On
December 24, 1986, the Colegio withdrew 70% of the balance
deposited in the escrow account and (according to plaintiffs) the
total of the interest, leaving 30% of the deposit balances
remaining in the escrow account. Since the amount originally
deposited in escrow was 50% of total dues, the 30% of deposit
balances remaining in escrow after the withdrawal corresponded to
15% of total dues. Apparently the Colegio presumed that it was
entitled by the terms of the 1986 remedy to reduce the dissenters'
dues withholding for prior years from the 50% of total dues the
Supreme Court of Puerto Rico mandated in 1984 to the 15% of total
dues mandated by its 1986 decision. However, plaintiffs also claim
the Colegio withdrew all of the interest earned in the account, not
just 70% of it. They also argue that nothing in the Supreme Court
of Puerto Rico's opinion stated its 15%-withholding-based remedy
would be applied retroactively. Plaintiffs also allege they never
received account statements, the name of the bank, or the number of
account, as required by the January 23, 1985 stipulation.
 It is important to note what is not in dispute here:
under the district court's 1998 order, every plaintiff should
ultimately receive refunds equal to the total amounts originally
deposited in escrow (with interest on any previously-unrefunded
portion):
   [F]or the years in which plaintiffs and other
 lawyers, following the commencement of this
 action up to the promulgation of the rules
 referred to above, paid 50% or another portion
 of their annual compulsory dues into an escrow
 account and said amounts have not been
 refunded then the Colegio shall refund the
 unrefunded amounts together with interest on
 those amounts from the end of the membership
 year for which they were deposited.

Schneider XI at 1-2. The Colegio must refund any amounts that were
"paid" but "unrefunded," regardless of how much actually remains in
the escrow account. At issue, then, is only the question of
sanctions. I find no abuse of discretion in the district court's
conclusion that "the fairest way to resolve" the refund dispute,
Schneider IX, 947 F. Supp. at 42, was its refund order, without the
imposition of any sanction.

E. Hctor L. Mrquez's hours
 Schneider purports to argue on behalf of Hector L.
Mrquez-Figueroa, another attorney who represented dissenting
attorneys in this litigation, that the court erred in not granting
an award of attorney's fees for hours expended by Mrquez on behalf
of plaintiffs Jorge F. Romany, Jorge Souss-Shidrewa, and Oreste V.
Ramos-Daz (the "consolidated plaintiffs") over the course of this
litigation. The Colegio argues that this part of the appeal was not
properly noticed, as the consolidated plaintiffs were not listed in
the caption of the notice of appeal filed by Schneider. That notice
is captioned "Robert E. Schneider, Jr., et als., plaintiffs."
Federal Rule of Appellate Procedure 3(c)(1)(A) states that the
notice of appeal must "specify the party or parties taking the
appeal by naming each one in the caption or body of the notice, but
an attorney representing more than one party may describe those
parties with such terms as 'all plaintiffs,' 'the defendants,' 'the
plaintiffs A, B, et al.,' or 'all defendants except X'." (Emphasis
added.) Schneider, however, was not representing Mrquez's
"consolidated plaintiffs," and thus was not entitled to designate
those plaintiffs as appellants informally through the use of "et
al." in his notice of appeal. Although Federal Rule of Appellate
Procedure 3(c)(4) states that "[a]n appeal must not be dismissed
for informality of form or title of the notice of appeal, or for
failure to name a party whose intent to appeal is otherwise clear
from the notice," this rule does not save the deficiency in the
notice of appeal: "The failure to name a party in a notice of
appeal is more than excusable 'informality'; it constitutes a
failure of that party to appeal." Torres v. Oakland Scavenger Co.,
487 U.S. 312, 314 (1988). The consolidated plaintiffs failed to
appeal the court's award of attorney's fees, and we therefore lack
jurisdiction to consider the issue of Mrquez's fees for
representing them. See id. at 317.

F. The liability of the Justices of the Supreme Court of Puerto
Rico for an award of attorney's fees
 Schneider and Ramos insist the court erred in holding
that the Justices of the Supreme Court of Puerto Rico were not
liable for any part of the attorney's fees award. The district
court ruled that the Justices would not be liable for attorney's
fees because they had been reduced to nominal parties early in the
case. See Schneider IX, 947 F. Supp. at 43 (fees ruling); Schneider
II, 695 F.2d at 27 (Justices remain in case as nominal parties, but
only as to their "administrative responsibilities in respect to the
stamp statutes"). Schneider and Ramos focus entirely (and
unpersuasively) on the Justices' potential fees liability for their
"non-adjudicative enforcement" and remedy-drafting actions,
responsibilities for which the Justices were not parties in this
case. The court's ruling was not an abuse of discretion.

 For all of the reasons stated above, I concur with the
judgment of the court.

</body>

</html>